**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DERRICK, et al., | : |
| | : Civil Action No. 2:19-cv-01541-HB |
| Plaintiffs | : |
| | : |
| v. | : |
| | : |
| THE GLEN MILLS SCHOOLS, et al., | : |
| | : |
| Defendants | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANTS, THE GLEN MILLS SCHOOLS AND
RANDY IRESON, TO STRIKE AND/OR DISMISS PLAINTIFFS' COMPLAINT**

STRADLEY RONON STEVENS & YOUNG, LLP
By:  Joseph McHale (Pa. No. 65706)
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA  19355
610.640.8007
jmchale@stradley.com

Joseph T. Kelleher (Pa. No. 202786)
Brandon M. Riley (Pa. No. 316136)
2005 Market Street, Suite 2600
Philadelphia, PA  19103
215.564.8034; 215.564.8147
jkelleher@stradley.com; briley@stradley.com

*Counsel for Defendants,
The Glen Mills Schools and Randy Ireson*

Defendants, The Glen Mills School ("Glen Mills") and Randy Ireson ("Dr. Ireson," and together with Glen Mills, collectively, the "Glen Mills Defendants"), by and through their undersigned counsel, Stradley Ronon Stevens & Young, LLP, hereby submit this memorandum of law in support of their Motion to Strike and/or Dismiss Plaintiffs' Complaint (the "Motion").

## I.   <u>INTRODUCTION</u>

Fueled by a sensationalized and unsubstantiated article in *The Philadelphia Inquirer*, much of which is regurgitated in Plaintiffs' Complaint, Plaintiffs purport to bring this class action on behalf of "hundreds of youth who suffered at the hands of Glen Mills leadership and staff." In their massive, 506-paragraph Complaint, the filing of which was accompanied by a televised press conference, Plaintiffs accuse the Glen Mills Defendants of subjecting Glen Mills students to "physical violence and psychological abuse" while depriving them of an appropriate education. Employing language that resembles tabloid journalism more than federal court pleading, Plaintiffs claim that "lurking inside [Glen Mills'] storied halls was a culture of malicious and sadistic abuse," which Plaintiffs describe as "reminiscent of the darkest times – real or imagined – in our history of the maltreatment of youth." In addition to their generalized accusations about Glen Mills' so-called "culture of violence," Plaintiffs, four individuals who were previously adjudicated delinquent and placed at Glen Mills by juvenile courts, also level serious allegations against the Glen Mills Defendants and others concerning individual alleged instances of physical abuse by staff members and students at Glen Mills as well as alleged deficiencies in the educational services provided to students at Glen Mills.

Plaintiffs' allegations of institutionalized and systemic abuse at Glen Mills are false. Likewise, Glen Mills' investigation of Plaintiffs' more specific allegations of individual instances of abuse reveals that the allegations either mischaracterize or exaggerate the facts or, in many instances, are demonstrably false. The Glen Mills Defendants will prove that Glen Mills

1

puts the safety and well-being of its students, including Plaintiffs, first, that Glen Mills provides quality educational services to its students (in circumstances where traditional classroom instruction simply is not feasible), and that Plaintiffs' allegations to the contrary are groundless. That, of course, is a fight for another day.  However, there are important issues that the Court can and should address at this stage of the litigation.

*First*, Plaintiffs' Complaint, which spans nearly 150 pages and is rife with purple prose and lengthy quotes from news articles and other documents, fails to conform to the requirements of Federal Rule of Civil Procedure 8(a).  Far from a "short and plain statement" of Plaintiffs' claims, the Complaint is a seemingly endless tome that defendants cannot reasonably be expected to answer.  The Glen Mills Defendants request that the Court strike the Complaint and require Plaintiffs to file a complaint that complies with Rule 8(a) by setting forth Plaintiffs' claims in simple, direct allegations to which the defendants can reasonably respond.

*Second*, it is obvious from the face of Plaintiffs' Complaint that this case cannot be maintained as a class action under Federal Rule of Civil Procedure 23.  The alleged class and subclasses are so amorphously-defined, and the alleged claims and relief sought so necessarily individualized, that it is impossible for this case to proceed on a class basis in any manner consistent with Rule 23 and due process.  No amount of class discovery will enable Plaintiffs to satisfy the requirements of Rule 23, and the Glen Mills Defendants therefore request that the Court strike the class allegations from Plaintiffs' Complaint, allowing each Plaintiff to proceed with his claims on an individual basis.

*Third*, Plaintiffs' education-based claims against Glen Mills (Counts III, IV, V, IX, and X), including those framed as arising under 42 U.S.C. § 1983 ("Section 1983"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504), and the Americans with

Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), all are grounded in the alleged failure of Glen Mills to provide a free appropriate public education ("FAPE"). As such, the claims sound in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (the "IDEA"), and Plaintiffs were required to exhaust their administrative remedies under the IDEA, or plead a legitimate excuse for failing to pursue such remedies, as a jurisdictional prerequisite to bringing this action. Plaintiffs failed to do so, and the Court should dismiss Plaintiffs' education-based claims for lack of subject matter jurisdiction.

*Finally*, Plaintiffs' Section 1983 claim in Count I purports to assert a claim against the Glen Mills Defendants under both the Eighth and Fourteenth Amendments, arising from the alleged "excessive and unreasonable use of force" and the alleged failure to provide adequate medical treatment. However, only the Eighth Amendment applies to such claims by individuals in state custody, like Plaintiffs. Accordingly, the Glen Mills Defendants request that the Court dismiss Plaintiffs' Count I for failure to state a claim to the extent that the claim is grounded in the alleged violation of the Fourteenth Amendment.

## II.    FACTUAL BACKGROUND[1]

Plaintiffs allege that Glen Mills is a private residential rehabilitative institution located in Glen Mills, Pennsylvania, which provides educational and rehabilitative services in connection with the court placement of adjudicated youth. (Compl. ¶¶ 1, 23-25.) Plaintiffs allege that Dr. Ireson was the Executive Director at Glen Mills from 2013 through February 2019, with responsibility for the management and supervision of Glen Mills' day-to-day operations. (*Id.* ¶¶ 28-29.)

---

[1]    The facts set forth in this section are taken from the allegations of the Complaint. Glen Mills denies many of these allegations; however, they are taken as true for the purposes of the Motion.

Although Plaintiffs purport to bring this action on behalf of "hundreds of youth who suffered at the hands of Glen Mills leadership and staff" (*id.* ¶ 2), the Complaint sets forth the individualized claims of four Glen Mills students – "Derrick," "Walter," "Thomas," and "Sean" – regarding alleged inadequate educational services and physical abuse at Glen Mills.[2]

A.    <u>Allegations as to "Derrick"</u>

Derrick alleges that he was adjudicated delinquent in September 2017 and was placed at Glen Mills in March 2018, after he violated probation.  (*Id.* ¶ 84, 88.)  Derrick resided at Glen Mills until March 2019.  (*Id.* ¶ 84.)  Plaintiffs allege that Derrick is diagnosed with Attention-Deficit Disorder, Hyperactivity Disorder and therefore is eligible for an Individualized Education Program ("IEP").  (*Id.* ¶ 85.)  Despite his alleged need for specialized education, Plaintiffs allege that Derrick was placed in a computer-based credit recovery program that was not differentiated from the other students at Glen Mills and did not provide instruction or support from a teacher, except for one hour of live reading assistance each week.  (*Id.* ¶¶ 89-90.)  Derrick alleges that he had difficulty with the computer-based program due to lack of support and instruction as well as technical problems.  (*Id.* ¶¶ 90-92.)  Plaintiffs allege that Derrick eventually was removed from the computer-based program and provided paper learning materials, but that he nonetheless did not receive appropriate instruction.  (*Id.* ¶ 106.)

Plaintiffs allege that during Derrick's stay at Glen Mills, the school did not conduct a proper IEP meeting with his mother and instead unilaterally created an IEP for Derrick, which reduced the specialized educational services Derrick had been receiving prior to attending Glen

---

[2]    Plaintiffs have identified themselves in the Complaint only by pseudonyms.  Plaintiffs, however, have not even attempted to demonstrate that they meet the high bar of establishing a "*reasonable* fear of *severe* harm" necessary to overcome the "universal public interest in access to the identities of litigants."  *Doe v. Megless*, 654 F.3d 404, 408-411 (3d Cir. 2011) (emphasis added).  At the appropriate time, Glen Mills intends to move the Court for an Order directing Plaintiffs to amend the Complaint to identify the actual parties asserting claims in this action.

Mills.  (*Id.* ¶¶ 93-99.)  Plaintiffs further allege that Glen Mills did not provide the educational services set forth in the IEP the school created for Derrick, that Derrick did not receive the individualized behavior support he needed, and that he was unable to attend vocational programming because he was designated as a student "on Concern."  (*Id.* ¶¶ 100-105.)  Plaintiffs generally allege that Derrick did not receive the courses and hours of instruction required by state law.  (*Id.* ¶ 108.)

Derrick also alleges that he was physically abused by Glen Mills staff and students while he resided at Glen Mills.  (*Id.* ¶ 108.)  Plaintiffs allege that while living in Jefferson Fillmore Hall, Derrick was punched by a staff member on three different occasions.[3]  (*Id.* ¶ 109.)  Derrick alleges that on another occasion, he was punched by a student during a physical altercation in his unit.  (*Id.* ¶¶ 110-111.)  While living at Jackson Hall, Derrick alleges that he was head-butted by staff member Andre Walker.  (*Id.* ¶ 112.)  Plaintiffs also allege that Derrick "faced physical abuse" while being restrained by unidentified Glen Mills staff members in the cafeteria (John Does 8-11) and in the classroom (John Doe 12).[4]  (*Id.* ¶¶ 113-115.)  Derrick alleges that "he was rarely seen by medical staff at Glen Mills," despite these incidents.  (*Id.* ¶ 116.)  Derrick also claims that he witnessed "over 200" fights among Glen Mills students.  (*Id.* ¶ 117.)

**B.     Allegations as to "Walter"**

Walter, through his mother, alleges that in March 2018, he was placed at Glen Mills, at the age of 16, by a Philadelphia County juvenile court judge.  (*Id.* ¶¶ 19, 126.)  Walter alleges that he resided at Glen Mills from March 2018 through March 2019.  (*Id.* ¶ 19.)  Without specificity, Plaintiffs allege that Walter has "qualifying disabilities" and is eligible for special

---

[3]     Despite residing in Jefferson Fillmore Hall for two months, Derrick apparently is unable to identify the staff member, whom Plaintiffs refer to in the Complaint as "John Doe 7."  (Compl. ¶ 109.)

[4]     Again, Derrick is unable to identify any of the five staff members he claims "abused" him.

education services under an IEP.  (*Id.* ¶ 19, 124.)  Despite his alleged disabilities, Derrick claims

that he was placed in a computer-based credit recovery program that was not differentiated from

the other students at Glen Mills and did not provide instruction or support from a teacher.  (*Id.* ¶

128.)  When Walter refused to participate in the computer-based program, Glen Mills staff

allegedly allowed Walter to go without any education services for two months.  (*Id.* ¶ 129.)  And

when Walter was placed "on Concern," he allegedly was denied access to the special education

resource room and vocational training.  (*Id.* ¶ 130.)  Plaintiffs allege that Walter eventually was

transferred from the computer-based credit recovery program to a GED program and provided

GED workbooks for independent study, without live instruction from teachers.  (*Id.* ¶¶ 141-142.)

Walter took the GED test or GED practice tests on multiple occasions, but he did not pass the

test before leaving Glen Mills. (*Id.* ¶ 146.)  Walter's mother alleges that she was neither

consulted about Walter's education nor included in the development of his IEP.  (*Id.* ¶ 127, 144.)

Plaintiffs generally allege that Walter did not receive the courses and hours of instruction

required by state law.  (*Id.* ¶ 143.)

    Walter claims that he witnessed and experienced physical abuse at Glen Mills.  He

alleges that a staff member (identified as "Sean Doe") slapped him and pushed him against a

refrigerator when the staff member found a makeshift "self-defense" weapon Walter had secreted

in his unit.  (*Id.* ¶ 131.)  Walter alleges that another staff member (Chris Doe) grabbed him by the

throat and choked him.  (*Id.* ¶ 132.)  When Walter was caught during an attempted escape from

the Glen Mills campus, Glen Mills employee Robert Taylor allegedly dragged him through thorn

bushes, and, when back at the housing unit, "violently assaulted" him.  (*Id.* ¶¶ 133-134.)  Walter

also alleges that he witnessed more than 30 physical restraints, in which staff members slapped,

punched, or choked students, including an incident where a staff member stepped on a student's

jaw. (*Id.* ¶¶ 139-140.) Finally, Walter alleges that he was choked by a fellow Glen Mills student and Glen Mills staff members did not protect him. (*Id.* ¶ 149.)

C.     **Allegations as to "Thomas"**

Thomas, through his mother, alleges that he was placed at Glen Mills in May 2018, at the age of 15, by a Philadelphia County juvenile court judge, after having been adjudicated delinquent. (*Id.* ¶¶ 21, 154-155.) Thomas alleges that he resided at Glen Mills until March 2019. (*Id.* ¶ 154.) Plaintiffs allege that Thomas is "suspected of being" a student with a disability. (*Id.* ¶ 21.) Thomas alleges that he was placed in a computer-based credit recovery program and was not given any other option for learning, despite telling Glen Mills that he could not learn through a computer-based program. (*Id.* ¶ 157.) Plaintiffs allege that Thomas' mother requested an IEP for Thomas, but none was given; that Thomas, a ninth-grader, was given eleventh grade work; and that Glen Mills reported better grades to Thomas' mother while he was at Glen Mills than what the school reported at the time of his discharge. (*Id.* ¶¶ 158-164.) Thomas alleges that during times when he was designated as "on Concern," he was not permitted to participate in "Career Technical Education." (*Id.* ¶ 167.) Plaintiffs allege that Thomas accumulated 6.5 credits during his nine months at Glen Mills and, generally, did not receive the courses and hours of instruction required by state law. (*Id.* ¶¶ 165-166.)

Thomas alleges that a Glen Mills staff member (Chris Doe 2) hit him in the eye after Thomas bumped into him. (*Id.* ¶ 173.) When Thomas hit back "in self-defense," the staff member allegedly jumped on top of Thomas and hit him again. (*Id.*) This incident resulted in Thomas sustaining a black eye for which he received medical attention the next day. (*Id.* ¶ 174.) Thomas claims that during his time at Glen Mills he also observed physical abuse, including staff members slapping and punching students. (*Id.* ¶¶ 169-171, 177.)

###### D.     Allegations as to "Sean"

Sean, through his grandmother, alleges that he was placed at Glen Mills in February 2019, at the age of 16, by a Luzerne County juvenile court judge, after having been adjudicated delinquent, and left Glen Mills a few weeks later in March 2019.  (*Id.* ¶¶ 22, 183-184.)  Sean was enrolled in the computer-based credit recovery program but was not provided a computer and was unable to participate in the on-line modules.  (*Id.* ¶ 185.)  Although Glen Mills provided Sean with educational worksheets, he alleges that a staff member told him that he did not need to complete them.  (*Id.* ¶ 186.)  Because Sean was designated as "on Concern" during his brief stay at Glen Mills, he was not able to leave his unit to participate in vocational training.  (*Id.* ¶ 187.) Plaintiffs generally allege that Sean did not receive the courses and hours of instruction required by state law.  (*Id.* ¶ 188.)

Sean alleges that he witnessed Glen Mills staff "verbal[ly] abuse" and threaten students and that he observed "roughly five to eight staff-on-youth assaults," including a staff member slamming a student against a wall.  (*Id.* ¶¶ 189-192, 200.)  Sean also alleges that he observed "roughly 20 youth-on-youth fights."  (*Id.* ¶ 200.)  Sean claims that he, himself, was attacked by a student, who punched Sean three times, resulting in a broken jaw and damage to his mouth.  (*Id.* ¶¶ 193-198.)  After the altercation, Glen Mills staff members (John Does 13-20) cleaned and bandaged a cut on Sean's forehead and took him to another unit to stay overnight.[5]  (*Id.* ¶¶ 194-195.)  The next day, Sean was taken to a dentist at Glen Mills, who took an x-ray of Sean's jaw and gave him ibuprofen.  (*Id.* ¶ 195.)  Three days later, when the swelling remaining, Sean was taken to an outside dentist who treated Sean's broken jaw.  (*Id.* ¶¶ 196-197.)  Sean was restricted

---

[5]     Incredibly, Sean is unable to identify any of the staff members who responded to the incident.

to a liquid diet because his jaw was wired shut, and he claims that John Does 13-20 did not provide him a "nutritional alternative" or "balanced drinkable diet." (*Id.* ¶ 198.)

### E.   Plaintiffs' Class Allegations

Plaintiffs purport to assert their claims on behalf of a "General Class" consisting of "all youth and young adults who were adjudicated delinquent and were placed by state or local juvenile justice systems at Glen Mills …", which then is divided into four sub-classes:

- the "Education Subclass" – "all class members who, while at Glen Mills, were deprived of an education in accordance with the requirements of the Pennsylvania School Code";

- the "Special Education Subclass" – "all class members who were identified as children with disabilities as defined by [IDEA] prior to placement at Glen Mills";

- the "Suspected-To-Be Eligible Special Education Subclass" – "all class members suspected of being student with disabilities who were never identified and/or evaluated while at Glen Mills";

- the "Disability Subclass" – "all class members … who have qualifying disabilities as defined under Section 504 and ADA."

(Compl. ¶¶ 39-42, 44.)  Plaintiffs also allege a "Special Education Parent Subclass" comprised of parents of Special Education Subclass members.  (*Id.* ¶ 43.)  On behalf of the class members, Plaintiffs assert claims against Glen Mills and/or Dr. Ireson under Section 1983 (Counts I, III, and IV), the Pennsylvania state education laws (Count V), Section 504 (Count IX), the ADA (Count X), and common law (Negligence, Count XI).  Plaintiffs seek compensatory and punitive damages, together with injunctive and declaratory relief, for themselves and the class members.  (Compl., "Prayer for Relief.")

## III.   <u>ARGUMENT</u>

### A.   **The Court Should Strike Plaintiffs' Complaint for Failure to Conform with the Requirements of Rule 8(a)(2).**

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a) is well-established: "to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (ellipses in original). Relatedly, Rule 8(d)(1) mandates that "[e]ach allegation must be simple, concise and direct." Fed. R. Civ. P. 8(d)(1). The Third Circuit has recognized that "[t]aken together, Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 at 169 (2d ed. 1990)).

Courts have held that an unduly lengthy and convoluted pleading that frustrates the defendant's ability to respond runs afoul of Rule 8(a)(2) and should be stricken or dismissed. *See*, *e.g.*, *Westinghouse*, 90 F.3d at 703-704 (upholding dismissal of a 600+ paragraph complaint); *Mann v. Boatright*, 477, F.3d 1140, 1147-48 (10th Cir. 2007) (upholding dismissal of a 99-page complaint); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378-79 (7th Cir. 2003) (upholding dismissal of a 400-paragraph complaint). As one court explained, courts and litigants should not need to "to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011).

Here, far from a "short and plain statement" of Plaintiffs' claims, Plaintiffs' Complaint, spanning more than 500 paragraphs and nearly 150 pages, is a behemoth. Moreover, the

10

Complaint is rife with dramatic prose and sensationalized allegations more befitting a newspaper exposé (like the Lisa Gartner piece attached as Exhibit B to the Complaint) than a federal court pleading.[6]  As the CCIU aptly notes in its Motion to Dismiss, Plaintiffs' Complaint was written in a manner "plainly intended to enhance the media blitz that accompanied its filing."  (CCIU Br. (ECF No. 12-1) at 5.)  Plaintiffs obviously prefer to prosecute their case in the court of public opinion before the Glen Mills Defendants can defend themselves in a court of law, with due process.  For these reasons, the Glen Mills Defendants move the Court to strike the Complaint under Federal Rule of Civil Procedure 12(f), which permits the court to strike "redundant, immaterial, impertinent, or scandalous matter," and require Plaintiffs to file a complaint that conforms to the requirements of Rule 8 before Defendants are forced to answer Plaintiffs' allegations – a procedure that the Third Circuit has endorsed as "making a tremendous amount of sense."  *Westinghouse*, 90 F.3d at 703.[7]  This Court "ha[s] repeatedly granted motions to dismiss … needlessly verbose complaints and [should] continue to do so here."[8]  *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, No. 18-cv-20224-HB, 2019 WL 2137472, at *1 (E.D. Pa. May 3, 2019) (dismissing 96-page amended complaint, with leave to file second amended complaint not to exceed 40 pages).

---

[6]   In its brief in support of its Motion to Strike and Motion to Dismiss the Plaintiffs' Complaint (ECF No. 12-1), Defendant, Chester County Intermediate Unit (the "CCIU"), sets forth in greater detail the ways in which Plaintiffs' Complaint runs afoul of the pleading requirements of Rule 8.  (*See* CCIU's Br. (ECF No. 12-1) at 4-7.)  The Glen Mills Defendants hereby join in, adopt, and incorporate by reference the argument set forth in CCIU's brief.

[7]   The court in *Westinghouse* cited favorably the Ninth Circuit's decision in *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1544 (9th Cir. 1994) (en banc), where the court stated:  "We see nothing to prevent the district court … from requiring, as a matter of prudent case management, that plaintiffs streamline and reorganize the complaint before allowing it to serve as the document controlling discovery, or, indeed, before requiring defendants to file an answer."

[8]   This is in keeping with Federal Rule of Civil Procedure 1, which provides that the rules shall be "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

11

B.     **The Court Should Strike Plaintiffs' Class Action Allegations.**

     1.     **Legal Standard**

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).  An action may proceed on a class basis only if the plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23, which the Supreme Court has described as "a one-size-fits-all formula for deciding the class-action question."  *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 US 393, 399 (2010).  Under the express language of Rule 23, two conditions must be met to maintain a class action: "The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." (*Id.*)  Additionally, courts have held that "implicit" in Rule 23 is the requirement that the proposed class be "definite" or "ascertainable."  *Bell v. Cheswick Generating Station*, No. 12-cv-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) (citations omitted).  "[A]scertainability entails two important elements.  First, the class must be defined with reference to objective criteria.  Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

Where the requirements of Rule 23 are not met, the court may issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  While courts generally consider whether a proposed class meets the Rule 23 requirements after the plaintiffs move for class certification, nothing prevents a court from addressing class certification earlier in the

12

proceedings.  *See Thompson v Merck & Co., Inc.*, No. 01-cv-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) ("At the outset, we note that plaintiffs argue that this court lacks authority to strike the class allegations from the complaint until after the plaintiffs have filed a motion for class certification.  We do not agree.").  In fact, Rule 23 itself contemplates early resolution of class certification, stating: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).

In some cases, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93, n.30 (3d Cir. 2011).  As the Supreme Court explained:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*Falcon*, 457 U.S. at 160.  "[W]here it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the allegations before a motion for class certification is filed."  *Semenko v. Wendy's Int'l, Inc.*, No. 12-cv-0836, 2013 WL 1568407, at *3 (W.D. Pa. April 12, 2013) (quoting *NBL Flooring, Inc. v. Trumball Ins. Co.*, No. 10-cv-4398, 2011 WL 4481918, at *1 (Sept. 11, 2011)).  Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f) allow courts to do so.  "These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification."  *Bell*, 2015 WL 401443, at *2.  Similarly, if it is clear from the complaint that "no amount of discovery will demonstrate that the class can be maintained," a court can strike the plaintiff's class allegations prior to class discovery.  *Id.* (citations and emphasis omitted); *see*

13

*also Semenko*, 2013 WL 1568407, at *11 (striking class allegations prior to class certification motion or class discovery).

Regardless of whether the issue of class certification is raised by way of a defendant's motion to strike or the plaintiff's motion for class certification, "[t]he plaintiffs bear the burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Semenko*, 2013 WL 1568407, at *2. In other words, "accelerating the class certification question does not alter the traditional Rule 23 burdens…." *Bell*, 2015 WL 401443, at *3. Here, Plaintiffs cannot meet their burden, and the Court should strike Plaintiffs' class allegations.

### C.     <u>Plaintiffs' Proposed Classes Are Not Ascertainable.</u>

Plaintiffs' proposed classes cannot be certified because they are not "ascertainable." As the court in *Bell* noted, "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court should first consider whether a precisely defined class exists…." *Bell*, 2015 WL 401443, at 3 (quoting *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004)). Each of the proposed classes require individualized fact-finding to identify the class members, rendering them unascertainable. *See Wright v. City of Wilmington*, No. 13-1966-SLR-SRF, 2016 WL 356023, at *4 (D. Del. Jan. 28, 2016) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013)).

For example, the "Education Class" is defined as Glen Mills students who "were deprived of an education in accordance with the requirements of the Pennsylvania Code." (Compl. ¶ 40.) This is a classic "fail-safe" class that cannot satisfy the "ascertainability" requirement for class certification. *Bell*, 2015 WL 401443, at *4. "When a class definition involves an ultimate issue of liability, the court must conduct mini-hearings in order to determine

14

who belongs within the class and who does not, rendering the process administratively infeasible and therefore unascertainable." *Id.* Here, whether potential class members were given a FAPE is not an issue that can be determined through reliable and feasible administrative processes based on objective criteria. Instead, in order to identify the members of Plaintiffs' putative class, the litigants and the Court will need to engage in mini-trials to determine the specific facts regarding the educational services provided to the class member and whether it complied with applicable law.[9]

Similarly, determining whether class members fall into the "Special Education," "Suspected-To-Be-Eligible Special Education," "Special Education Parent," and "Disability" subclasses, requires individualized fact inquiries into the specific educational, developmental, behavioral, and medical characteristics and histories of each putative class member, necessitating mini-trials to determine class membership. *See Semenko*, 2013 WL 1568407 (noting that determining whether a potential class member is a "qualified individual with a disability" is a "highly individualized analysis which would require a number of individualized mini-trials") (citations and quotations omitted). Importantly, anything short of proceeding with such mini-trials to establish class membership would deprive Glen Mills of its right to due process. *See Royal Mile Co., Inc. v. UPMC*, 40 F. Supp. 3d 552, 582 (W.D. Pa. 2014) ("The requirement of ascertainability protects the due process rights of defendants in class action lawsuits."). As the Third Circuit has recognized: "A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of

---

[9]   Plaintiffs also allege that they, like all of the putative class members, were subjected to or witnessed abuse of youth by staff, were subjected to a culture of intimidation and humiliation, and were subject to a policy and practice of inadequate medical attention. (Compl. ¶ 45.) Of course, individualized inquiries (involving individualized proofs) would be required to identify Glen Mills students who actually experienced these alleged issues.

a plaintiff's claim." *Carrera*, 727 F.3d at 307.  Here, due process requires that the Court strike Plaintiffs' class allegations.

>    **D.**    **Plaintiffs Cannot Satisfy Rule 23(a)(2) or (3).**

Plaintiffs purport to assert class claims under both Rule 23(b)(2) and (3) (Compl. ¶¶ 65, 71); however, their proposed Class is not viable under either subsection.  For this reason as well, the Court should strike Plaintiffs' class allegations.  *See Thompson*, 2004 WL 62710, at *3 (striking class allegations where "plaintiffs cannot satisfy either Rule 23(b)(2) or (3)").

Rule 23(b)(2) permits class certification where, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  "Class actions certified under (b)(2) are restricted to those cases where *the primary relief sought* is injunctive or declaratory relief."  *Thompson*, 2004 WL 62710, at *3 (emphasis added) (citing *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir.1998)).

"Where, as here, the putative class seeks injunctive and declaratory relief as well as compensatory damages, the Third Circuit measures the predominance of money damages in the Rule 23(b) context using the 'incidental damages' standard set forth by the Fifth Circuit to determine whether the monetary damages are incidental to the injunctive and declaratory relief sought."  *Wright*, 2016 WL 356023, at *7 (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 198-99 (3d Cir. 2009)).  "Incidental damages" are those that "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."  *Thompson*, 2004 WL 62710, at *3 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998) (emphasis in original)).  Courts consider three factors in determining whether a class seeks "incidental damages":

(1) whether such damages are of a kind to which class members would be automatically entitled;

(2) whether such damages can be computed by "objective standards" and not standards significantly reliant upon "the tangible, subjective differences of each class member's circumstances"; and

(3) whether such damages would require additional hearings to determine.

*Id.*

Here, Plaintiffs seek "compensatory and punitive damages." (Compl., "Prayer for Relief" ¶ C.)  Such damages cannot be computed by objective standards, are subject to differences based on each class member's circumstances, and plainly would require individualized hearings to determine.  *See Thompson*, 2004 WL 62710, at *4 ("Plaintiffs' request for compensatory and punitive damages on behalf of each class member would necessarily require individualized proof of injury.")  "Plaintiff's claims therefore cannot as a matter of law satisfy the prerequisites for class certification under Rule 23(b)(2)."  *Id.*; *see also Wright*, 2016 WL 356023, at *7 (striking class allegations for failure to satisfy Rule 23(b)(2) where "determining each class member's monetary damages will require an individualized analysis.").

Plaintiffs' proposed class claims fare no better under Rule 23(b)(3).  Rule 23(b)(3) permits class actions where "the questions of law or common fact to class members predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d

Cir. 2008) (citations and quotations omitted).  "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

Here, there is no question that the essential elements of Plaintiffs' purported causes of action require individual treatment, rendering class certification impossible.  Adjudicating Plaintiffs' excessive force and education-based claims implicates numerous individualized issues bearing on both liability and damages, each of which will require individualized proofs as to each class member.  *See Wright*, 2016 WL 356023, at *8 (denying class certification on Section 1983 claims where "each class member's inclusion would require an analysis of whether the facts and legal character of the detention comport with plaintiff's theory").  For each class member, the factfinder must answer, among others, the following questions:  Was he physically abused?  If so, how, when, by whom, and under what circumstances?  Did he suffer any damages?  If so, of what nature and in what amount?  Similarly, individualized issues as to each of the specific claims of the sub-classes abound:  In what educational programs was the class member enrolled, and why?  Was the class member evaluated for a qualifying disability?  If not, why not?  Was an IEP developed for the class member?  If so, under what circumstances and with whose involvement?  None of these questions can be resolved on a class basis.  And, of course, the defenses that Glen Mills may present will vary from class member to class member. *See Thompson*, 2004 WL 62710, at *5 (noting that the defendant's unique defenses to class members' claims negate predominance).  Based on the nature of Plaintiffs' purported class claims, it is inescapable that this action, "conducted nominally as a class action[,] would degenerate in practice into multiple lawsuits tried separately."  *Id.*  As the court in *Semenko* explained, "predominance exists only when there exists generalized evidence which proves or

disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."  2013 WL 1568407, at *11.  That clearly is not the case here.  As is evident from the Complaint, including the varied allegations even among the named student Plaintiffs, the proposed class claims in this action "cannot be adjudicated in a one size fits all format, as required by Rule 23(b)(3)," and the Court should strike Plaintiffs' class allegations.  *Id.*

### E.   The Court Should Dismiss Plaintiffs' Education-Based Claims for Plaintiffs' Failure to Exhaust Their Administrative Remedies.

#### 1.   Legal Standard

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint."  *Swope v. Cent. York Sch. Dist.*, 796 F. Supp. 2d 592, 598-99 (M.D. Pa. 2011) (citations and quotations omitted).  "A plaintiff's failure to exhaust his administrative remedies is a jurisdictional issue, such that the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction."  *Swope*, 796 F. Supp. 2d at 599 (citations omitted).

#### 2.   Plaintiffs' Education-Based Claims Sound under the IDEA, and Plaintiffs Must Exhaust the Administrative Remedies of the IDEA before this Court Can Exercise Jurisdiction over Plaintiffs' Claims.

Plaintiffs assert several education-based claims against the Glen Mills Defendants in their Complaint, alleging procedural due process and equal protection violations under the Fourteenth Amendment through Section 1983 (Counts III and IV); denial of a FAPE under Pennsylvania law (Count V); violation of Section 504 (Count IX); and violation of the ADA (Count X).  Plaintiffs cannot proceed with any of these claims in this action because they are all subsumed under the IDEA, which has a strict administrative exhaustion requirement.  Plaintiffs did not

satisfy this exhaustion requirement, and the Court therefore lacks subject matter jurisdiction over these education-based claims.

Section 1415(*l*) of the IDEA "requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act or similar laws" when the lawsuit "'seeks relief that is also available' under the IDEA." *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 752 (2017) (quoting 20 U.S.C. § 1415(*l*)). The IDEA's exhaustion rule "hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education ["FAPE"]." *Id.* at 754. "If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA[.]" *Id.* "Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises." *Id.* But, if the lawsuit is brought under a different statute and "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id.* To make that determination, the Court must look to the "crux – or in legal-speak, the gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.* at 755. The Court, therefore, must "examine whether a plaintiff's complaint – the principal instrument by which she describes her case – seeks relief for the denial of an appropriate education." *Id.* Claims under the Section 504 or the ADA are likewise subject to the IDEA's exhaustion requirement. *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 273–74 (3d Cir. 2014). Section 1415(l) therefore "bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute – *e.g.*, section 1983, section 504 of the Rehabilitation Act, or the ADA." *Id.* at 272 (quoting *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996)) (alteration in original).

Here, Plaintiffs' education-based claims explicitly involve the alleged denial of a FAPE and are brought under Section 504, the ADA, or both.  Taking them each in turn, Count III alleges that the Glen Mills Defendants "violated the procedural due process rights of the Education Subclass by depriving them of their right to an education[.]"  (Compl. at 115.) Similarly, Count IV alleges that the Glen Mills Defendants "violated the Fourteenth Amendment rights of the Education Subclass by depriving Plaintiffs equal access to a public education."  (*Id.* at 118.)  Next, Count V alleges that the Glen Mills Defendants "violated the rights of the Education Subclass to a public education under Pennsylvania law."  (*Id.* at 120.)  Count IX alleges that the Glen Mills Defendants "violated the rights of the Disability Subclass under Section 504 of the Rehabilitation Act."  (*Id.* at 129.)  Finally, Count X alleges that the Glen Mills Defendants "violated the rights of the Disability Subclass under the [ADA]."  (*Id.* at 134.) Plainly, each of Plaintiffs' education-based claims "seeks relief for the denial of an appropriate education" or arises under Section 504 or the ADA, requiring exhaustion under the IDEA prior to filing suit in this Court.  *Fry*, 137 S.Ct. at 755.

Exhausting IDEA's administrative process "is required in order for the statute to 'grant[ ] subject matter jurisdiction to the district court [ ].'"  *Batchelor*, 759 at 272 (quoting *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994) ("[I]t is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court.") (alterations in original); *see also* 20 U.S.C. § 1415(i)(3)(A).  The purpose of requiring administrative exhaustion under the IDEA prior to filing suit is to "develop the factual record and resolve evidentiary disputes concerning, for example, evaluation, classification, and placement."  *W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995); *see also Grieco v. N.J. Dept. of Educ.*, No. 06–4077, 2007 WL 1876498 (D.N.J. June 27,

21

2007) (noting "ordinary rule" that education cases are "best resolved with the benefit of agency expertise and a fully developed administrative record") (citation and internal quotations omitted). Importantly, even where, as here, plaintiffs bring claims on behalf of themselves and on behalf of a class sounding in the IDEA, exhaustion is nevertheless required. *See, e.g.*, *N.A. ex rel. D.A. v. Gateway Sch. Dist.*, 820 F. Supp. 2d 649, 653 (W.D. Pa. 2011) (granting motion to dismiss for failure to exhaust administrative remedies and rejecting plaintiffs' argument that class plaintiffs need not satisfy the IDEA's exhaustion requirement); *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 559 (E.D. Pa. 2008) (same).

No Plaintiff makes any allegation that he made any attempt to satisfy the IDEA's exhaustion requirement. Plaintiffs also do not claim that doing so would be inadequate or futile. Instead, in a footnote, they baldly assert that the IDEA's administrative exhaustion requirements do not apply "[b]ecause Defendants violate the IDEA through it systemic policies and practices …" and cite *Beth V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996), as supporting that proposition. (Compl. ¶ 335 n.26.) Plaintiffs' reliance on *Beth V.*, however, is misplaced. First, Plaintiffs cannot defeat the IDEA's exhaustion requirement with a footnote containing conclusory allegations of systemic violations. *See Blunt*, 559 F. Supp. 2d at 559 (explaining that "[p]laintiffs cannot overcome the clear emphasis on the claims of the individual students by including conclusory allegations of some systemic deficiencies"). Second, as Defendant CCIU argues in its brief in support of its motion to dismiss (ECF No. 12-1), the *Beth V.* case concerned the lack of an adequate state compliance hearing system, not individuals claiming that they were deprived of a FAPE, as is the case here.[10] *See Beth V.*, 87 F.3d at 89. Moreover, the Third

---

[10]   As with the arguments under Rule 8(a), CCIU sets forth in greater detail the IDEA's administrative exhaustion requirement. (*See* CCIU's Br. (ECF No. 12-1) at 7–12.) The Glen Mills Defendants likewise join in, adopt, and incorporate by reference these arguments set forth in CCIU's brief.

Circuit declined to decide the exhaustion issue, remanding it instead to the district court.  *Id.*  The *Beth V.* case therefore does not relieve Plaintiffs of the exhaustion requirement under the IDEA.

In sum, because Plaintiffs failed to comply with the IDEA and initially pursue their alleged deprivation of a FAPE through its administrative process, this Court lacks the subject matter jurisdiction to adjudicate Plaintiffs' education-based claims.  Accordingly, the Court should dismiss Counts III, IV, V, IX, and X of Plaintiffs' Complaint.

**F.    Plaintiffs' Section 1983 Claim Premised on the Fourteenth Amendment Must Be Dismissed.**

**1.    Legal Standard**

"When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff."  *Lim v. Rajan*, No. 13-cv-1385-HB, 2013 WL 5272845, at *1 (E.D. Pa. Sept. 18, 2013) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008); *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).  The court must then determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  A claim must do more than raise a "mere possibility of misconduct."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

**2.    Plaintiffs' Purported Fourteenth Amendment Claim Fails as a Matter of Law.**

Although Plaintiffs allege that the Eighth and Fourteenth Amendments each protect Plaintiffs "from excessive and unreasonable use of force, to be protected from harm, and to receive adequate medical treatment" (Compl. at 110, 112 (Counts I and II)), only the Eighth

23

Amendment applies to excessive force claims by individuals who are in state custody like Plaintiffs.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In addressing an excessive force claimed under § 1983, analysis begins by identifying the *specific constitutional right* allegedly infringed by the application of force[,]" which in most instances is either under the Fourth Amendment or the Eighth Amendment  *Id.* (emphasis added).  "The validity of the claim must then be judged by reference to the specific constitutional standard that governs that right, rather than to some generalized 'excessive force' standard."  *Id.* (citations omitted).  This is called the "more-specific provision rule," which requires any constitutional claim "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment" to be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]."  *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998).  The Third Circuit expressly adopted the more-specific provision rule in *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 259-60 (3d Cir. 2010).

The "specific constitutional rights" in the context of an excessive force claim are as follows:  The Fourth Amendment protects a free citizen from unreasonable searches and seizures.  *See Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968).  At the point where the arrest ends and pretrial detention begins, "the Due Process Clause" [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Graham*, 490 U.S. at 395 n.10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535–539 (1979)).  "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see also Betts*, 621 F.3d at 261 (rejecting adjudicated delinquent youth's argument that the Due Process Clause applied to his claims because "these

allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment" and that therefore "the more-specific provision rule forecloses [plaintiff's] due process claims").

Recognizing these distinctions, the Supreme Court in *Whitley* stated that the Eighth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, provides the rule for deciding excessive force claims by people convicted of crimes or adjudicated delinquent because, with respect to such persons, "the State has [already] complied with the constitutional guarantees traditionally associated with criminal prosecutions." 475 U.S. at 318. Thus, "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment." *Graham*, 490 U.S. at 395 n.10 (citing *Whitley*, 475 U.S. at 327).

When applying these constitutional principles to Plaintiffs' purported claims arising under Fourteenth Amendments, it is clear that they should be dismissed. Plaintiffs' claims arising under the Fourteenth Amendment should are redundant and duplicative of their Eighth Amendment claims. *See Graham*, 490 U.S. at 395 n.10. As stated above, Plaintiffs' Complaint plainly (and mistakenly) alleges that the Eighth and Fourteenth Amendments provide protection for the same conduct. The more-specific provision rule, however, forecloses Plaintiffs' substantive due process claim under the Fourteenth Amendment. *See Betts*, 621 F.3d at 261. Accordingly, it should be dismissed.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the Glen Mills Defendants respectfully request that the Court grant their Motion and enter an Order in the form attached to the Motion.

Date:  July 15, 2019                              Respectfully submitted:


  /s/ Joseph McHale
STRADLEY RONON STEVENS & YOUNG, LLP
By:  Joseph McHale (Pa. No. 65706)
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA  19355
610.640.8007
jmchale@stradley.com

Joseph T. Kelleher (Pa. No. 202786)
Brandon M. Riley (Pa. No. 316136)
2005 Market Street, Suite 2600
Philadelphia, PA  19103
215.564.8034; 215.564.8147
jkelleher@stradley.com; briley@stradley.com

*Counsel for Defendants,*
*The Glen Mills Schools and Randy Ireson*

26