IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK, THROUGH AND WITH HIS　　:　　CIVIL ACTION
NEXT FRIEND AND MOTHER TINA, et　:
al.　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
GLEN MILLS SCHOOLS, et al.　　　 :　　NO. 19-1541

MEMORANDUM

Bartle, J.                                    December  19, 2019

　　　　Now pending before the court are various motions of
defendants challenging plaintiffs' complaint.  There are motions
to strike plaintiffs' entire complaint under Rules 8 and 10 of
the Federal Rules of Civil Procedure or, in the alternative, to
strike plaintiffs' class action allegations under Rule 12(f) and
Rule 23(d)(1)(D).  Certain defendants have also moved to dismiss
the complaint in part under Rule 12(b)(6) for failure to state a
claim and Rule 12(b)(1) for lack of subject matter jurisdiction.
In addition, several defendants have moved to sever the claims
against them.

　　　　Plaintiffs Derrick, through and with his next friend
and mother Tina, Walter, through and with his next friend and
mother Janeva, Thomas, through his next friend and mother
Michelle, and Sean, through his next friend and grandmother

Andrea, are four minors[1] who were placed at defendant Glen Mills Schools ("Glen Mills") after being adjudicated delinquent in the state courts of Pennsylvania. Plaintiffs allege that they were subject to physical and mental abuse at the hands of Glen Mills staff and administrators. The complaint also avers that Glen Mills failed to provide them with an adequate education and discriminated against students with disabilities. Plaintiffs, seeking injunctive, declaratory, and monetary relief, have commenced this putative class action on behalf of themselves and other similarly situated individuals.

The defendants, as set forth in the complaint, can be divided into several groups. First are the Glen Mills defendants, which include the School itself, Randy Ireson ("Ireson"), former Executive Director of Glen Mills Schools, former employees of Glen Mills Schools Andre Walker ("Walker") and Robert Taylor ("Taylor"), and various John Doe staff members. In addition, there are the Commonwealth of Pennsylvania defendants. They are Teresa D. Miller ("Miller"), as Secretary of the Pennsylvania Department of Human Services ("PA-DHS") in her individual capacity, TheodoreDallas ("Dallas"), as former Secretary of the PA-DHS in his individual

---

1. The complaint uses pseudonyms to protect the privacy of the named plaintiffs, who are minor children, and their parents or guardians.

capacity, Cathy Utz ("Utz"), as Deputy Secretary for the
Pennsylvania Office of Children, Youth, and Families ("PA-OCYF")
in her individual capacity, Pedro A. Rivera ("Rivera"), as
Secretary of the Pennsylvania Department of Education ("PA-DOE")
in his official capacity, and the PA-DOE itself.  Finally,
plaintiffs have asserted claims against a local educational
agency, the Chester County Intermediate Unit ("CCIU").

     Plaintiffs' complaint contains eighteen counts
alleging the following causes of action:  (1) under 42 U.S.C.
§ 1983 for violation of their rights to be free from excessive
force, to be protected from harm, and to receive adequate food
and medical treatment under the Eighth and Fourteenth Amendments
to the United States Constitution (Counts One, Two, Twelve,
Fourteen, Sixteen, and Eighteen); (2) under 42 U.S.C. § 1983 for
deprivation of an education in violation of the procedural due
process clause of the Fourteenth Amendment (Count Three);
(3) under 42 U.S.C. § 1983 for deprivation of an education in
violation of the equal protection clause of the Fourteenth
Amendment (Count Four); (4) for violation of the right to a
public education under Pennsylvania law (Count Five); (5) under
the Individuals with Disabilities Education Act ("IDEA"), 20
U.S.C. §§ 1400 et seq. (Counts Six through Eight); (6) under
Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 et seq.
(Count Nine); (7) under the Americans with Disabilities Act

-3-

("ADA"), 42 U.S.C. §§ 12101 et seq. (Count Ten); (8) for common law negligence (Count Eleven); and (9) for assault and battery (Counts Thirteen, Fifteen, and Seventeen).

I

Rule 8 provides, in relevant part, that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Under Rule 10, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. Defendants have raised a facial, as opposed to factual, challenge to subject matter jurisdiction. In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (quoting Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)). We apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). Accordingly, we accept as true all material allegations set forth in the complaint and construe those facts in favor of the nonmoving party. In re Schering Plough Corp., 678 F.3d at 243.

The following facts are alleged in the complaint and are taken as true for present purposes. Glen Mills is a non-profit Pennsylvania corporation. It is registered with the PA-DHS as a private residential rehabilitative institution ("PRRI"), a facility that provides "educational services as part of a total rehabilitative package" required in conjunction with the court placement of a child pursuant to a contractual agreement with a local education agency or intermediate unit. <u>See</u> 24 Pa. Stat. § 9-914.1-A(a), (c).

Defendant Randy Ireson was Executive Director of Glen Mills from 2013 until he resigned on February 28, 2019. John Does 1-6 were members of the Glen Mills leadership team and respectively supervised the six different departments at the school. Glen Mills staff defendants Andre Walker, Robert Taylor, Chris Doe 1, Chris Doe 2, Sean Doe, and John Does 7-12 were counselors and other staff members who allegedly physically assaulted plaintiffs Derrick, Walter, and Thomas. Glen Mills staff defendants John Does 13-20 failed to provide adequate treatment and food to plaintiff Sean.

Boys were involuntarily placed at Glen Mills by court orders from various jurisdictions in Pennsylvania and elsewhere in the country when they were adjudicated delinquent in juvenile court

proceedings.[2]  Plaintiffs allege a culture of violence and

intimidation which included almost daily violence by Glen Mills

staff, as well as Glen Mills staff encouraging boys to fight other

boys.  Glen Mills leadership failed to train, discipline and

supervise staff adequately.  Staff slapped in the face, assaulted

or jumped, improperly used physical restraints, choked and punched,

and threw objects such as tables and chairs at students.  These

actions resulted in injuries including broken arms, broken jaws,

body blows, and black eyes.  According to plaintiffs, Glen Mills

leadership knew of the violence and failed to stop it.  Glen Mills

and its leadership also failed to provide students with adequate

medical treatment, to supervise the boys properly, and to maintain

proper ratios of staff to students.

The complaint further alleges that if boys tried to run

away from Glen Mills, they would receive escape charges.  If they

fought back in self-defense during assaults by Glen Mills

employees, they would receive charges for harassment or assault.

These charges could lengthen the amount of time spent at Glen

Mills.  Boys were intimidated and discouraged from speaking out

about the violence and mistreatment.  Staff were encouraged to

remain silent regarding abuse and were terminated for reporting

---

2.  A small number of youth were also voluntarily placed at Glen
Mills by their parents or guardians.  Those youth are not
included in the proposed General Class discussed below.

abuse.  Boys were coerced into lying to any outside auditors or investigators, including PA-DHS representatives, and would be reprimanded if they did not portray Glen Mills favorably.  Glen Mills staff also monitored the boys' phone calls.

On April 8, 2019, all of Glen Mills' licenses were revoked by PA-DHS.  In a letter to Glen Mills, PA-DHS cited "gross incompetence, negligence, and misconduct in operating the facilities" and "mistreatment and abuse of children in care" as the reason for the license revocations.

The complaint contains the following allegations specific to the named plaintiffs.  Derrick was a student at Glen Mills from March 2018 to March 2019.  He has been diagnosed with Attention-Deficit, Hyperactivity Disorder ("ADHD") and is currently eligible for an Individualized Education Program ("IEP") under the IDEA.  In or about September 2017, Derrick was adjudicated delinquent and placed on probation for one year.  In March 2018, he was placed at Glen Mills for violating his probation.

Three weeks after being placed at Glen Mills, Derrick began a computer-based credit recovery educational program, which was not specialized to him and did not accommodate his disabilities.  He received reading assistance for only one hour per week, the same and sole intervention offered to other students with disabilities.  He did not receive any other instruction or support from a teacher and repeatedly failed tests.

For months at a time Derrick was designated as a student on "Concern Status" and, as a result, was not permitted to attend vocational programming or the special educational resource room. He did not make progress on his IEP goals, and his mother did not receive specific progress monitoring. After more than nine months at Glen Mills, a staff member removed Derrick from the computer-based program and provided him with packets of worksheets to complete his coursework. He did not receive any instruction and was expected to progress independently through the worksheets. During his time at Glen Mills he was provided with an IEP that was not individualized and was inadequate or incorrect. Glen Mills failed to follow the appropriate process under the IDEA for designing and implementing IEPs and excluded his mother from meaningful participation in the IEP process.

Derrick was also physically abused by staff and other students during his time at Glen Mills. He was punched repeatedly by staff. One night, he was punched while asleep in his bed and awoke to find more than a dozen other boys beating up his roommate, who was screaming for help. Derrick tried but was unable to help his roommate. He ran out of the building to escape the abuse. When staff found him, he received a charge for attempting to run away. He was also head-butted multiple times by defendant Walker and was tightly restrained by four staff members after he refused to tie his shoes. After breaking up a fight between Derrick and

another boy in a classroom at Glen Mills, a staff member grabbed
Derrick, slammed him on a desk, pushed the desk over, dragged him
across the floor, and hit his mouth with his knees.  Derrick was
rarely seen by medical staff at Glen Mills.

Although he witnessed over two hundred fights among boys
while at Glen Mills, Derrick and his parents were warned not to
speak out about the abuse.  His mother Tina witnessed a significant
change in his demeanor and personality as he became reserved,
quiet, secretive, and disengaged.  Tina observed bruising and
suspicious injuries on Derrick.  Staff listened in on his calls and
monitored his visits with his parents.

Plaintiff Walter is a "child with a disability" under
the IDEA and an individual with a disability under Section 504 of
the Rehabilitation Act and the ADA and is a "protected handicapped
student" under Chapter 15 of the Pennsylvania School Code.  He is
eligible to receive special education and related services through
an IEP and has previously received full-time special education
instruction at a private school for students with disabilities.  In
March 2018, when he was sixteen years old, Walter was sent to Glen
Mills.

Walter was initially placed in Glen Mill's
computer-based credit recovery educational program with no live
instruction.  After Walter informed Glen Mills staff that he could
not learn in this manner and refused to participate in the computer

program, he was placed on "Concern Status." Glen Mills failed to provide any alternative educational instruction for Walter. Instead, staff permitted Walter to continue without any educational program for two months. While Walter was on "Concern Status," he was not permitted to leave his unit to access the special education resource room or vocational programming. Walter's mother Janeva was never consulted about the education provided to Walter at Glen Mills.

On or around April 26, 2018, Walter took a metal pin from a weight machine to use for self-defense. When Sean Doe, a unit staff member, discovered the metal pin, he threw Walter against a refrigerator so hard that the refrigerator dented from the impact with Walter's head. Glen Mills did not provide him with medical attention. Thereafter, staff ordered all of the boys on the unit to line up. Chris Doe, another unit staff member, grabbed Walter by the throat and choked him. He could not breathe and believed he might die.

On May 3, 2018, Walter and another boy attempted to run away from Glen Mills. Defendant Taylor caught Walter and dragged him back through thorn bushes, resulting in a laceration on his lower back. Walter received no medical treatment for the laceration and now carries a scar. After Walter was brought back, Taylor assaulted Walter while two staff supervisors stood by and watched with threats to Walter not to fight back. Walter again was

provided no medical treatment and received a delinquency charge for the attempted escape.

Thereafter, Walter was transferred to another unit. He began a General Educational Development ("GED") program because he was told it was the only alternative to the computer-based program. Glen Mills did not obtain his mother's consent for him to participate in the program. In the GED program, Walter used workbooks that were several years old and did not accommodate for his disabilities. He received no live instruction from teachers. He did not receive all the courses and hours of instruction required by state law through either the computer-based program or the GED program. Glen Mills did not provide him with an IEP that was substantively and procedurally adequate and excluded his mother from the IEP process.

In November 2018, Walter completed his independent GED study. Glen Mills made available to him no other educational services from November 2018 through March 2019. Glen Mills administered to Walter a GED exam on three occasions. Walter did not pass and does not have a GED.[3]

_____

3. Under Pennsylvania Code, Walter was not eligible to take the GED exam as he was only seventeen years old and had been continuously enrolled in school with no court order directing that he take the exam. See 22 Pa. Code. § 4.72. Walter does not know whether he was administered actual GED exams or only practice tests.

On November 13, 2018, Walter woke up to find his roommate on top of him with his hands around his throat and fought back in self-defense. Staff failed to protect Walter from the attack and did not provide medical care. His mother witnessed a significant change in his demeanor during his time at Glen Mills. He became reserved and quiet, secretive, and disengaged. He was fearful for his safety and that of his family. Walter reports that he witnessed more than thirty improper physical restraints performed on boys and many assaults on boys that included slapping, punching, choking, and otherwise harming boys. Walter was discharged from Glen Mills in March 2019 when the Philadelphia Department of Human Services removed all those within its jurisdiction from Glen Mills. He was transferred to another residential institution for adjudicated youths in Pennsylvania where he currently remains.

Plaintiff Thomas was a student at Glen Mills from May 2018 through March 2019. He was placed at Glen Mills on May 8, 2018 after an adjudication of delinquency in Philadelphia. He was fifteen years old. After arriving at Glen Mills, Thomas was placed in the computer-based credit recovery program. He reports that unit staff or "counselors" are the only staff available to assist boys with this program. None or almost none of these staff members was a licensed teacher. Thomas objected to the computer-based program based on his previous experience with online learning but

was provided no alternative.  Although Thomas's mother requested that Thomas receive an IEP, he was never evaluated and thus did not receive services under the IDEA.

In October 2018, Thomas accidentally bumped into Chris Doe, a staff member, who responded by hitting him in the eye. Thomas hit back in self-defense, and the staff member jumped on top of Thomas and hit him a second time.  As a result of this altercation, Thomas had a black eye.  He did not receive medical attention for his injuries until the following day.  He received another delinquency charge, was placed on "Concern Status," and lost his opportunity for a home pass.  He was then transferred to another hall at Glen Mills.  While there, he continued to work on the computer-based learning program.  The hall had a classroom with unit staff available, but again none or almost none of the staff was a licensed teacher.

Throughout his time at Glen Mills, Thomas also witnessed staff physically abusing other boys, including slapping, hitting, and punching.  He reports that staff would instigate fights with boys by swearing at them.  Thomas's mother Michelle suspected that he was in danger while at Glen Mills and found it extremely difficult to speak with staff.  Michelle observed that Thomas became reserved, fearful, and watchful of his surroundings after his time at Glen Mills.  On March 5, 2019, he was discharged from Glen Mills.

Plaintiff Sean was a student at Glen Mills from February 2019 to March 2019.  He was placed at Glen Mills on February 7, 2019 after an adjudication of delinquency in Luzerne County.  He was sixteen years old.  While at Glen Mills, Sean did not access any educational program.  Although other students on his unit were enrolled in the computer-based credit recovery program, Sean was never provided with a computer.  The unit staff eventually gave Sean worksheets but told him "you don't have to do any of this." During his one-month stay at Glen Mills, Sean was on "Concern Status" and could not access any vocational programming.

During his time at Glen Mills, Sean witnessed daily verbal abuse of boys.  This abuse included threats of violence and insults directed at boys and their families.  Sean also witnessed physical abuse, including a staff member slamming a boy against a wall.  Sean also witnessed roughly twenty fights between boys.  On one occasion, he was punched in the face three times.  As a result of the assault, his orthodontic braces were bent, his tooth chipped, and his forehead and mouth bled.  Four days after the assault, Sean was taken to an outside dentist who confirmed that he had a broken jaw.  Sean's jaw was then wired shut during the remainder of his stay at Glen Mills.  Sean was not capable of consuming solid food with a wired jaw but was not provided with a nutritional alternative.  Instead, he was provided only milk and on occasion Gatorade.  The only other nutrition he received was

-15-

through two staff members who risked their employment by sneaking in yogurt and applesauce to him.  After the Philadelphia Inquirer ran a piece on Glen Mills in February 2019, Sean was informed by staff that he was not to speak to anyone about Glen Mills and was warned "don't say anything and be quiet."

Plaintiffs seek to represent a "General Class" consisting of all youths and young adults who were adjudicated delinquent and placed by state or local juvenile justice systems at Glen Mills at any time in the past two years prior to the date of filing of the complaint, or who were placed by state or local juvenile justice systems at Glen Mills at any time and turned 18 within two years of the date of filing of the complaint, or were placed by state or local juvenile justice systems at Glen Mills at any time and have not yet turned 18, as well as the parents of those youths and young adults.  Plaintiffs have also described a putative "Education Subclass" consisting of all class members who, while at Glen Mills, were deprived of an education in accordance with the requirements of the Pennsylvania School Code, a "Special Education Subclass" of all class members who were identified as children with disabilities as defined by the IDEA, and a "Suspected-to-be-Eligible Special Education Subclass" of all class members suspected of being students with disabilities who were never identified and/or evaluated at Glen Mills as required by the IDEA.  In addition, the complaint avers a "Special Education Parent

Subclass" of all parent class members whose children were placed at Glen Mills and are identified as children with disabilities under the IDEA. Finally, plaintiffs name a "Disability Subclass" of all class members placed at Glen Mills who have qualifying disabilities as defined under Section 504 of the Rehabilitation Act and the ADA.

### III

We begin with the motions of Glen Mills, Ireson, and CCIU to strike plaintiffs' complaint under Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 provides, in relevant part, that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Under Rule 10, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants characterize the complaint, which spans 149 pages and includes 506 paragraphs, as "Dickensian" and assert that it "requires hours to read" and "is virtually impossible to answer." According to defendants, this court should strike the complaint and require plaintiffs to file a complaint that conforms to the requirements of Rules 8 and 10 before defendants are forced to answer plaintiffs' allegations.

We decline to strike the complaint on these grounds. This is a complex case involving four named plaintiffs who have

asserted claims on behalf of themselves and a putative class of
similarly situated individuals, including several proposed
subclasses.  The complaint includes eighteen counts and thirteen
named defendants.  While lengthy, the complaint is well-organized
and is not vague, rambling, or incoherent such that is fails to
provide notice to defendants of plaintiffs' claims or that it
meaningfully impedes defendants' ability to answer.  Motions to
strike are disfavored and are granted sparingly.  See, e.g.,
McInerny v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393,
402 (E.D. Pa. 2002).

        Accordingly, the motions of defendants Glen Mills,
Ireson, and CCIU to strike the complaint under Rules 8 and 10 of
the Federal Rules of Civil Procedure will be denied.

                              IV

        We turn next to the motion of defendants Glen Mills and
Ireson to strike and dismiss plaintiffs' class action allegations
under Rule 23(c)(1)(A) and (d)(1)(D) of the Federal Rules of Civil
Procedure.[4]  See Bell v. Cheswick Generating Station, No. 12-929,
2015 WL 401443, at *1 (W.D. Pa. Jan. 28, 2015); Semenko v. Wendy's
Int'l, No. 12-0836, 2013 WL 1568407, at *1 (W.D. Pa. Apr. 12,
2013).  Rule 23(c)(1)(A) provides that "[a]t an early practicable

_____

4.  Defendants also reference Rule 12(f), which provides that
the court may strike from any pleading "an insufficient defense
or any redundant, immaterial, impertinent, or scandalous
matter."  That rule seems inapplicable here.

                             -18-

time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Under subsection (d)(1)(D) of that rule, a court may issue orders to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

As stated above, plaintiffs bring this lawsuit as a putative class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs have alleged claims on behalf of a putative general class of youths and young adults who were adjudicated delinquent and placed at Glen Mills, and their parents. They also allege various putative subclasses in relation to their education and disability-related claims.

A court may grant a motion to strike class allegations before discovery only where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011) (citing Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). However, such cases are the "rare few." See id. To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." Id. at 93 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). "In most cases, some level of discovery is essential to such an evaluation." Id. Thus,

-19-

generally class action allegations are properly evaluated after the parties have had an opportunity to conduct class discovery and a motion for class certification has been filed.[5]  See, e.g., Goode v. LexisNexis Risk & Info. Analytics Grp., 284 F.R.D. 238, 244 (E.D. Pa. 2012); P.V. ex rel. Valentin v. Sch. Dist. of Phila., No. 11-04027, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011); Korman v. Walking Co., 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007).

With that standard in mind, we turn to the merits of the motion of Glen Mills and Ireson.  Class certification may only be granted if the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied:

> (a) Prerequisites.  One or more members of a class may sue . . . as representative parties on behalf of all members only if
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;

---

5.  The authority cited by defendants is not to the contrary. In Landsman, the Court of Appeals vacated orders of the district court dismissing three class actions before discovery and the filing of motions for class certification on the grounds that the court's class certification analysis had been "conclusory" and "premature" and remanded for further proceedings.  640 F.3d at 93-95.  In Thompson v. Merck & Co., the district court granted a motion to strike class action allegations but only after the parties had conducted discovery but plaintiffs had failed to file a timely motion for class certification. No. 01-1004, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004).  And in Bell, the district court granted a motion to strike class allegations before discovery but granted plaintiffs leave to amend the class definition in their complaint.  2015 WL 401443, at *1-2, 7.

> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and
>
> (4) the representative parties will
> fairly and adequately protect the
> interests of the class.

The elements of this four-part test are commonly referred to as "numerosity," "commonality," "typicality," and "representativeness."

Defendants first contend that plaintiffs' class allegations under Rule 23(b)(3) must be stricken because plaintiffs have not sufficiently alleged an ascertainable or definitive class. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592–93 (3d Cir. 2012). The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). Ascertainability is "a relatively simple requirement." Byrd v. Aaron's Inc., 784 F.3d 154, 161 (3d Cir. 2015). However, a putative class action "will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." Hayes, 725 F.3d at 356.

To date, there has been no discovery and there is no information provided as to the defendants' records and what they may contain. On the current record, the court is unable to conduct the ascertainability analysis. Accordingly, defendants' motion to strike or dismiss on ascertainability grounds is premature.

Defendants also contend that the court should strike plaintiffs' allegations regarding their proposed classes seeking damages relief under Rule 23(b)(3) because damages cannot be computed on a class-wide basis and common issues will not predominate over individual issues.[6] Rule 23(b)(3) requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." In re Hydrogen Peroxide, 552 F.3d at 310–11 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Thus, predominance requires the court to make a determination that

_____

6. Defendants also move to strike plaintiffs' class action allegations on commonality grounds. The Rule 23(a) commonality requirement is considered incorporated into the "more stringent" Rule 23(b)(3) predominance requirement and therefore we "analyze the two factors together, with particular focus on the predominance requirement." See Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (internal citations and quotation marks omitted).

"[i]ssues common to the class . . . predominate over individual issues." In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 313-14 (3d Cir. 1998). This determination requires a "rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove" these elements. In re Hydrogen Peroxide, 552 F.3d at 312. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001).

A class seeking monetary relief under Rule 23(b)(3) is not precluded simply because individual class members suffered different injuries in a situation where liability flows from an official policy or widespread practice or custom of the defendant. As our Court of Appeals has stated, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Invs., Inc., 667 F.3d 273, 298 (3d Cir. 2011). Plaintiffs have alleged that the class members' injuries arise from common policies or practices promulgated by Glen Mills' management, including the school's failure to train, supervise, and discipline its staff, its indifference to abuse and violence, and its efforts to cover up or otherwise impede any investigation of the alleged abuse. Such

-23-

allegations are sufficient at this stage of the action to move forward. Assuming questions of law or fact common to the class predominate, individualized damage assessments can be made in separate damages trials or other proceedings. See <u>Neale v. Volvo Cars of N. Am., LLC</u>, 794 F.3d 353, 375 & n.10 (3d Cir. 2015). As stated above, the predominance inquiry requires a "rigorous assessment of the available evidence." <u>In re Hydrogen Peroxide</u>, 552 F.3d at 312. Without the benefit of at least some limited discovery, we are unable to conduct such analysis and any determination regarding predominance would be premature.

We turn now to the motion of Glen Mills and Ireson to strike and dismiss plaintiffs' putative class seeking injunctive and declaratory relief under Rule 23(b)(2).[7] In the complaint, plaintiffs seek "common declaratory and injunctive relief from the Court finding violations of the relevant laws" and "compensatory education services" on behalf of the Education, Special Education, Suspected-To-Be-Eligible Special Education, and Disability Subclasses against defendants the PA-DOE, PA-DOE Secretary Pedro Rivera, the CCIU, and Glen Mills for "failing to provide an appropriate, legally compliant education." Although

---

7. Ascertainability is not a requirement for certification of a Rule 23(b)(2) class seeking only injunctive and declaratory relief. <u>Shelton v. Bledsoe</u>, 775 F.3d 554, 562-63 (3d Cir. 2015).

plaintiffs include a general request for declaratory and injunctive relief in their prayer for relief, they do not specifically request such relief on a class-wide basis with respect to their claims alleging physical abuse and denial of food and appropriate medical care in Counts One, Two, Twelve, Fourteen, Sixteen, and Eighteen and their negligence claim in Count Eleven. Instead, they appear to limit their request for declaratory and injunctive relief to their educational and disability-related claims in Counts Three through Ten of the complaint.[8]

Under Rule 23(b)(2), plaintiffs may proceed with a class for injunctive and/or declaratory relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." While plaintiffs have standing to seek damages for past violations of their rights that may have occurred while they were housed at Glen Mills, they must have separate standing for forward-looking injunctive relief. See Richardson v. Bledsoe, 829 F.3d 273, 278 (3d Cir. 2016) (citing Friends of the Earth, Inc. v. Laidlaw Envtl.

---

8.  Defendants Glen Mills and Ireson also assert that plaintiffs cannot maintain a class under Rule 23(b)(2) because plaintiffs seek monetary damages that are more than incidental to their request for injunctive and declaratory relief. Plaintiffs have clarified that they intend to seek certification of a separate class for any damages claims under Rule 23(b)(3), not (b)(2). Thus, defendants' argument fails.

Servs., Inc., 528 U.S. 167, 185 (2000)).  To determine whether
plaintiffs have standing to seek injunctive relief, we consider
whether they can "show that [they are] likely to suffer future
injury from the [defendants'] conduct."  Id. (citing McNair v.
Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012)).  If standing
is lacking, this court does not have subject matter jurisdiction as
there is no "[c]ase" or "[c]ontrovers[y]."  See U.S. Const. art.
III, § 2.

     Plaintiffs lack standing to pursue claims for injunctive
and declaratory relief against defendants Glen Mills and Ireson
because the detentions of plaintiffs at Glen Mills ended prior to
the filing of their complaint and as stated in the complaint the
school is now closed.  Plaintiffs assert in their brief in
opposition to defendants' motion to strike and dismiss that Glen
Mills may reopen.  However, any reopening, along with the timing
and circumstances of such reopening, is uncertain at this juncture.
Plaintiffs may not rely on speculative or hypothetical future harms
to establish standing.[9]  See, e.g., Lujan v. Defs. of Wildlife, 504
U.S. 555, 564 & n.2 (1992).

---

9.  We reiterate that only Glen Mills and Ireson have moved to
strike and to dismiss plaintiffs' class allegations.  In any
event, the closure of Glen Mills would be irrelevant to whether
plaintiffs may proceed with their class-wide claims for
declaratory and injunctive relief against CCIU, the PA-DOE, and
Rivera.

In conclusion, the motion of Glen Mills and Ireson to strike and dismiss will be denied as to plaintiffs' class action allegations under Rule 23(b)(3) without prejudice to defendants' right to challenge any future motion for class certification. The motion will be granted as to plaintiffs' class action allegations against them under Rule 23(b)(2).

V

In Counts One, Twelve, Fourteen, Sixteen, and Eighteen of the complaint, plaintiffs allege that defendants Glen Mills, its former Executive Director Ireson, former Glen Mills employees Walker and Taylor, and various Glen Mills staff "Doe" defendants violated their rights under 42 U.S.C. § 1983 pursuant to the Eighth and Fourteenth Amendments to the United States Constitution to be free from excessive and unreasonable use of force, to be protected from harm, and to receive adequate food and medical treatment. These defendants have moved to dismiss these counts for failure to state a claim under Rule 12(b)(6) to the extent that they allege a violation of the due process clause of the Fourteenth Amendment.

The protections of the Eighth Amendment, while initially applicable only to the federal government, are now applicable to the states since they have been incorporated by the due process clause of the Fourteenth Amendment. See Timbs v. Indiana, 139 S. Ct. 682, 686-87 (2019); Mapp v. Ohio, 367 U.S. 643, 655 (1961). Glen Mills has not disputed that, during

-27-

the relevant time period, it was a state actor to which § 1983 applies.

In order to maintain a § 1983 claim, "a plaintiff must show that the defendant deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989). Analysis of a § 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Under the "more-specific-provision rule," any constitutional claim "covered by a specific constitutional provision" must be analyzed under the standard appropriate to that specific provision and not under the more general rubric of substantive due process under the Fourteenth Amendment. Lewis, 523 U.S. at 843-44 (internal citations omitted).

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This Amendment has been interpreted to prohibit conduct that constitutes an "unnecessary and wanton infliction of pain" or that is "repugnant to the conscience of mankind." Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). To state

-28-

a claim for relief, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." Id. Our Supreme Court has made clear that "[a]n examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977). Thus, in Ingraham, the Court held that the Eighth Amendment did not apply to the paddling of children as a means of maintaining discipline in public schools. Id.

The Supreme Court again examined the interplay between Eighth and Fourteenth Amendment claims in Whitley v. Albers, 475 U.S. 312 (1986). There, a prisoner shot in the leg during a prison riot filed both Eighth Amendment and Fourteenth Amendment substantive due process claims against prison officials. 475 U.S. at 314-15. The Court rejected the prisoner's Fourteenth Amendment due process claim:

> [T]he Eighth Amendment, which is specifically
> concerned with the unnecessary and wanton
> infliction of pain in penal institutions,
> serves as the primary source of substantive
> protection to convicted prisoners in cases
> such as this one, where the deliberate use of
> force is challenged as excessive and
> unjustified.  It would indeed be surprising
> if, in the context of forceful prison security
> measures, "conduct that shocks the conscience"
> or "afford[s] brutality the cloak of law," and
> so violates the Fourteenth Amendment, were not
> also punishment "inconsistent with

> contemporary standards of decency" and
> "'repugnant to the conscience of mankind,'" in
> violation of the Eighth. . . . Because this
> case involves prison inmates rather than
> pretrial detainees or persons enjoying
> unrestricted liberty we imply nothing as to
> the proper answer to that question outside the
> prison security context by holding, as we do,
> that in these circumstances the Due Process
> Clause affords respondent no greater
> protection than does the Cruel and Unusual
> Punishments Clause.

Id. at 327 (internal citations omitted).

Plaintiffs point out that, under Pennsylvania law, an adjudication of delinquency is not a criminal conviction. 42 Pa. Cons. Stat. Ann. § 6354; see also United States v. Bucaro, 898 F.2d 368, 372 (3d Cir. 1990). However, the fact that plaintiffs were juveniles and were not convicted of any crime is not dispositive of whether the Eighth Amendment applies. In In re Winship, our Supreme Court held that juveniles, like adults in the criminal setting, are constitutionally entitled to have applied the standard of proof beyond a reasonable doubt even though the juvenile adjudication is civil in nature. 397 U.S. 358, 365 (1970).

In support of their position that the due process clause of the Fourteenth Amendment does not apply to juveniles adjudicated delinquent, defendants cite to Betts v. New Castle Youth Development Center, 621 F.3d 249 (3d Cir. 2010). In Betts, the plaintiff, a juvenile who had been adjudicated delinquent, brought claims against the defendant juvenile detention facility and

several of its staff for permitting him to play tackle football without any safety equipment, which resulted in a spinal cord injury that rendered plaintiff a quadriplegic.  621 F.3d at 252-53. Plaintiff alleged that defendants were deliberately indifferent to a substantial risk of serious harm to him in violation of his rights under the Eighth Amendment.  Id. at 256.  Plaintiff also asserted that defendants were deliberately indifferent to his liberty interest in bodily integrity and that allowing him to play tackle football without equipment constituted a state-created danger in violation of his right to substantive due process under the Fourteenth Amendment.  Id. at 259.

Our Court of Appeals affirmed the grant of summary judgment against plaintiff on his claim under the due process clause of the Fourteenth Amendment.  Id. at 261.  The Court reasoned that because the plaintiff's allegations regarding the conditions of his confinement and defendants' alleged failure to ensure his safety "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment," the "more-specific-provision rule foreclose[d] [plaintiff's] substantive due process claims."[10]  Id.

---

10.  The Court of Appeals also ultimately affirmed the grant of summary judgment in favor of defendants on plaintiff's Eighth Amendment deliberate indifference claim because plaintiff had failed to raise a genuine dispute of material fact as to whether there was a substantial risk of harm that was known to defendants. Id. at 257-58.

In <u>A.M. ex rel. J.M.K. v. Luzerne County Juvenile</u>
<u>Detention Center</u>, a case cited by plaintiffs, our Court of Appeals
did apply the due process clause of the Fourteenth Amendment to a
juvenile's claims against a detention center for failure to protect
him from harm while at the center.  372 F.3d 572, 575, 579 (3d Cir.
2004).  However, the plaintiff was awaiting final disposition and
placement on the charges against him and had not yet been
adjudicated delinquent.  <u>Id.</u> at 575.  Thus, plaintiffs' claims were
properly analyzed under the due process clause of the Fourteenth
Amendment because plaintiff was merely a juvenile detainee.  <u>Id.</u> at
579, 584.

In light of <u>Betts</u>, we agree with defendants that
plaintiffs' claims under § 1983 are cognizable under the Eighth
Amendment rather than the due process clause of the Fourteenth
Amendment.  While plaintiffs have cited authority from outside of
this circuit applying the Fourteenth Amendment to § 1983 claims
brought by juveniles adjudicated delinquent, we are bound to follow
the decision of our Court of Appeals directly on point.  <u>See, e.g.</u>,
<u>A.J. by L.B. v. Kierst</u>, 56 F.3d 849, 854 (8th Cir. 1995); <u>Santana</u>
<u>v. Collazo</u>, 714 F.2d 1172, 1179 (1st Cir. 1983).

Accordingly, the motions of defendants to dismiss
plaintiffs' claims under 42 U.S.C. § 1983 in Counts One, Twelve,
Fourteen, Sixteen, and Eighteen of the complaint to the extent such

claims are predicated on violation of their rights under the due process clause of the Fourteenth Amendment will be granted.

VI

Miller, Dallas, and Utz, the PA-DHS defendants, have moved to dismiss Count Two of the complaint, which alleges that they violated plaintiffs' rights under the Eighth Amendment to be free from excessive and unreasonable force and to receive adequate medical care pursuant to § 1983.[11] These defendants assert that this claim against them is barred based on sovereign immunity. The Eleventh Amendment to the United States Constitution bars federal lawsuits against state governments: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity also protects state employees sued in their official capacities because such suits "'generally represent only another way of pleading an action' against the state." Betts, 621 F.3d at 254 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). Sovereign immunity is a

---

11. Count Two of the complaint also alleges that Miller, Dallas, and Utz violated plaintiffs' rights under the due process clause of the Fourteenth Amendment. We will dismiss Count Two to the extent it is predicated in violation of the due process clause of the Fourteenth Amendment for the reasons discussed above in Section V.

"jurisdictional bar." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

Plaintiffs have asserted a claim under § 1983 for money damages against defendants Miller, Dallas, and Utz in their individual capacities. State officials may be sued in their individual capacities even for acts they took within the scope of their official duties. See Hafer, 502 U.S. at 26-29. Liability under § 1983 turns not on the capacity in which defendants acted when injuring the plaintiff but on the capacity in which the state official is sued. See id. at 27. Thus, sovereign immunity does not preclude plaintiffs' claims against Miller, Dallas, and Utz.

Miller, Dallas, and Utz also assert that the claim against them should be dismissed because they are entitled to qualified immunity. State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a qualified immunity defense is asserted, a court must determine: (1) "whether the facts alleged by the plaintiff make out a violation of a constitutional right"; and (2) "whether that right was clearly established at the time of the injury." Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 170 (3d Cir. 2017) (citing Yarris v. Cty. of Del., 465 F.3d 129, 140-41 (3d Cir. 2006)). The

-34-

court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Plaintiffs, minors who were involuntarily committed to Glen Mills, have alleged in the complaint a violation of their constitutional rights under the Eighth Amendment to be free from excessive and unreasonable force and to receive adequate medical care and food. See Betts, 621 F.3d at 261. According to plaintiffs, Pennsylvania courts may only commit children adjudicated delinquent to residential facilities that are approved by PA-DHS. See 42 Pa. Cons. Stat. Ann. § 6352(a)(3). Plaintiffs further assert that Miller, Dallas, and Utz were responsible for the licensure, oversight, and regulation of Glen Mills and had a duty to protect the safety and well-being of boys placed at Glen Mills. Despite at least eighteen reports to PA-DHS of abuse by Glen Mills staff against these boys from March 2014 through January 2017, Miller, Dallas, and Utz continued to license Glen Mills and allegedly failed to take any meaningful action against Glen Mills to prevent further abuse.

Plaintiffs' right under the Eighth Amendment to be free from excessive force and to receive adequate medical care and food was also clearly established under precedent handed down by both the United States Supreme Court and our Court of Appeals. "[W]hen

-35-

the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989) (citing Youngberg v. Romeo, 457 U.S. 307, 315 (1982)); see also Estelle, 429 U.S. at 103–04; Betts, 621 F.3d at 261. Thus, the state violates the Eighth Amendment where "by the affirmative exercise of its power [it] so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." DeShaney, 489 U.S. at 200. Because plaintiffs have sufficiently alleged a violation of their clearly-established constitutional rights, defendants are not entitled to qualified immunity.

Accordingly, defendants Miller, Dallas and Utz are not immune from suit based on sovereign immunity and at this stage are not entitled to qualified immunity. Their motion to dismiss plaintiffs' § 1983 claim premised on violation of the Eighth Amendment in Count Two of the complaint will be denied.[12]

---

12. Miller, Dallas, and Utz have also asserted that plaintiffs' claim in Count Two premised on violation of the Eighth Amendment should be dismissed for failure to state a claim. Miller, Dallas, and Utz have taken the position, contrary to other defendants, that plaintiffs' claim is properly brought under the Fourteenth Amendment pursuant to A.M. See 372 F.3d at 584. As

In Counts Three and Four, plaintiffs assert pursuant to § 1983 that defendant Rivera, the Secretary of PA-DOE, in his official capacity, as well as defendants CCIU and Glen Mills, violated plaintiffs' rights to procedural due process and equal protection under the Fourteenth Amendment by depriving them of an education. Both counts seek "prospective injunctive and declaratory relief, including the provision of compensatory educational services." Plaintiffs do not seek damages as to these counts.

Rivera asserts that he is immune from these claims. As stated above, a state official sued in an official capacity is generally entitled to immunity under the Eleventh Amendment. However, under Ex Parte Young, suits against state officials that seek prospective relief to end an ongoing violation of federal law are permitted. 209 U.S. 123, 155-60 (1908). Plaintiffs can therefore bring suit against state officers in their official capacities, but the remedies to which they are entitled are limited to those that are "designed to end a continuing violation of federal law." Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 318 (3d Cir. 2013) (quoting

_____

discussed above, we have rejected this position. Accordingly, we decline to dismiss plaintiffs' Eighth Amendment claim in Count Two on this ground.

Green v. Mansour, 474 U.S. 64, 68 (1985)).  Plaintiffs, however,

may not be awarded damages or other forms of retroactive relief.

Id. at 319 (citing Pennhurst State Sch. & Hosp., 465 U.S. at 103).

Rivera points to the fact that plaintiffs are no longer

at Glen Mills and the school is no longer operating.  Thus, he

maintains that there is no ongoing violation of federal law for

which this court could provide prospective relief.  See Christ the

King Manor, Inc., 730 F.3d at 319.  However, whether Glen Mills is

closed is irrelevant to the issue of whether Rivera, as Secretary

of the PA-DOE, is immune from suit.  Compensatory education

"aim[s] to place disabled children in the same position they

would have occupied but for the school district's violations of

IDEA," by providing the educational services children should

have received in the first instance.  G.L. v. Ligonier Valley

Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015).  It is an

equitable remedy.  See, e.g., Ferren C. v. Sch. Dist. of Phila.,

612 F.3d 712, 717–18 (3d Cir. 2010).  A plaintiff retains

standing to seek compensatory education even if the plaintiff

has left or been removed from the educational placement at

issue.  See, e.g., D.F. v. Collingswood Borough Bd. of Educ.,

694 F.3d 488, 498 (3d Cir. 2012).  Thus, plaintiffs may still be

entitled to seek compensatory education and other equitable relief

to remedy alleged violations of their educational rights by Rivera

as Secretary of the PA-DOE despite the fact that Glen Mills is closed.[13]

Accordingly, the motion of Rivera to dismiss Counts Three and Four will be denied.[14]

VIII

CCIU, the intermediate unit, asserts that all claims against it should be dismissed and it should be released as a party to this action because it is not a "local educational agency" in relation to Glen Mills and thus is not responsible for the education of students placed at Glen Mills. Specifically, CCIU asserts that it was limited to the role of "fiscal watchdog" or "monitor" over Glen Mills and was expressly prohibited from exercising administrative control over educational programming at Glen Mills such as the hiring or firing of teachers and the design or supervision of its curriculum. As noted above, plaintiffs have asserted claims against CCIU in Counts Three through Ten for

_____

13.  Rivera and the PA-DOE have not asserted a sovereign immunity defense as to plaintiffs' claim under the IDEA, since that statute abrogates this defense. <u>See</u> 20 U.S.C. § 1403; 34 C.F.R. § 300.177.

14.  We also decline to dismiss Counts Three and Four under Rule 12(b)(6).  Plaintiffs have alleged that they were completely excluded from educational programming or were provided with such inferior educational programing to constitute a functional exclusion.  Such allegations are distinguishable from the facts presented in the cases cited by Rivera and are sufficient to state a claim under the Fourteenth Amendment at this stage of the proceedings.

violation of their rights to an education under the due process and equal protection clauses of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 as well as under Pennsylvania law, the IDEA, Section 504 of the Rehabilitation Act, and the ADA.

Under the IDEA, a local education agency ("LEA") is defined as:

> [A] public board of education or other public authority legally constituted within a State <u>for either administrative control or direction of, or to perform a service function for</u>, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 1401(19) (emphasis added). Pennsylvania law further provides that LEAs include intermediate units such as CCIU. 22 Pa. Code § 14.103; <u>see also</u> 24 Pa. Stat. Ann. § 9-901-A.

CCIU does not dispute that Glen Mills is a private rehabilitative residential institution ("PRRI") under Pennsylvania law. A PRRI is defined as a:

> [F]acility, other than one operated by a public agency, which as of December 31, 1977 provided to juveniles legally committed thereto or legally committed to a day treatment program of that institution pursuant to a proceeding under the . . . "Juvenile Act," educational services as part of a total rehabilitative package, funded, at least in part, through contractual agreements with the county of which each child is a resident.

24 Pa. Stat. Ann. § 9-914.1-A(c).  An intermediate unit such as CCIU "shall have the power to contract with [PRRIs] for educational services to be provided to children as part of any rehabilitative program required in conjunction with the placement of a child in any such institution" pursuant to the Pennsylvania Juvenile Act. Id. § 9-914.1-A(a).  However, a PRRI "shall be exempt from administrative control by the intermediate unit contracting therewith other than those controls necessary to assure the proper expenditure of funds for the maintenance of the minimum education program provided for in the contract."  Id. § 9-914.1-A(d).  Such contracts "shall not require compliance with this act to any extent greater than such compliance existed on the effective date of this amendatory act."  Id.

As contemplated by section 9-914.1-A, the relationship between CCIU and Glen Mills was governed by a contract.  While the contract states that Glen Mills is responsible for providing an free appropriate public education to its students, it also provides that CCIU shall monitor Glen Mills for the purpose of ensuring compliance with federal and state laws related to exceptional children and shall notify the PA-DOE of any noncompliance.  In addition, CCIU shall conduct on-site random reviews of student records to ensure Glen Mills is classifying children appropriately, shall review the process for development of IEPs at Glen Mills, and shall appoint a representative to participate in IEP team meetings.

-41-

Thus, under the plain language of section 9-914.1-A as well as the relevant contract, CCIU had responsibility to oversee the educational programming at Glen Mills and to report to PA-DOE any noncompliance with federal or state law. Plaintiffs have alleged here that CCIU completely failed to monitor Glen Mills. Such allegations are sufficient at this stage of the action for plaintiffs to proceed with their claims against CCIU. It is irrelevant that CCIU did not exercise complete administrative control over Glen Mills as such control is not required under the IDEA or the other causes of action raised by plaintiffs.[15] See 20 U.S.C. § 1401(19).

Accordingly, the motion of CCIU to dismiss all claims against it will be denied.

IX

Next, defendants Glen Mills, CCIU, Rivera, and the PA-DOE assert that plaintiffs' education-related claims under § 1983, IDEA, Section 504 of the Rehabilitation Act, and the ADA in

---

15. In Pennsylvania, a child is generally considered a resident of the school district where his or her parents reside. 24 Pa. Stat. Ann. § 13-1302(a). The parties have cited to section 13-1306 of the Pennsylvania Public School Code. See 24 Pa. Stat. Ann. § 13-1306. That section provides that where a child is placed into a residential facility located in a school district other than the school district in which his or her parents reside, the school district in which the institution is located becomes responsible for providing an appropriate program of special education. Section 13-1306 further states that "it is not intended to supersede section 914.1-A" discussed above. Accordingly, section 13-1306 does not alter our analysis.

Counts Three through Ten of the complaint should be dismissed for failure to exhaust administrative remedies under the IDEA. As a remedy for those claims, plaintiffs appear to seek declaratory and injunctive relief as well as compensatory damages.

The IDEA provides both procedural and substantive rights to "children with disabilities" and their parents in order to ensure a "free appropriate public education." 20 U.S.C. §§ 1400(d)(1)(A), 1415. Parents and children with disabilities who claim violations of the IDEA must first file an administrative complaint with a due process hearing officer. Id. § 1415(f). This complaint may pertain to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. § 1415(b)(6). Any aggrieved party then "ha[s] the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States." Id. § 1415(i)(2)(A).

In addition, any claim seeking relief that is also available under the IDEA "shall be exhausted to the same extent as would be required had the action been brought under this subchapter." Id. § 1415(l). This provision "bars plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of

the Rehabilitation Act, or the ADA." M.S. v. Marple Newtown Sch.
Dist., 635 F. App'x 69, 71 (3d Cir. 2015) (quoting Batchelor v.
Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014)). As
our Court of Appeals has explained, administrative exhaustion
"serves the purpose of developing the record for review on appeal,
encourages parents and the local school district to work together
to formulate an individualized plan for a child's education, and
allows the education agencies to apply their expertise and correct
their own mistakes." Woodruff v. Hamilton Twp. Pub. Sch., 305
F. App'x 833, 837 (3d Cir. 2009) (internal citations omitted).

        We begin with plaintiffs' claims against Glen Mills. It
has not been sued under the IDEA but instead has been sued for
violation of plaintiffs' rights under the Fourteenth Amendment,
Pennsylvania state law, the ADA, and Section 504 of the
Rehabilitation Act. Although under the IDEA children with
disabilities may be placed in a private school or facility as a
means of providing special education and related services, ultimate
responsibility for the appropriate provision of such services
remains with the state or local education agency. See 20 U.S.C.
§ 1412(a)(10)(B)(i); 34 C.F.R. §§ 300.146-300.147. For purposes of
the IDEA, Glen Mills is not a state or local educational agency but
rather a private school that cannot be held liable. See Bardelli
v. Allied Servs. Inst. of Rehab. Med., No. 14-0691, 2015 WL 999115,
at *5-6 (M.D. Pa. Mar. 6, 2015); J. v. Sch. Dist. of Phila.,

No. 06-3866, 2007 WL 1221216, at *2-4 (E.D. Pa. Apr. 25, 2007).
Thus, plaintiffs' claims against Glen Mills under the Fourteenth
Amendment, Pennsylvania state law, the ADA, and Section 504 of the
Rehabilitation Act do not seek relief that is otherwise available
under the IDEA.  These claims against Glen Mills therefore are not
subject to the IDEA's exhaustion requirement.[16]  <u>See</u> 20 U.S.C.
§ 1415(l).

        We turn now to plaintiffs' education-related claims
against the PA-DOE, Rivera, and CCIU.  No plaintiff here has filed
an administrative complaint against CCIU, Rivera, or the PA-DOE or
otherwise sought to exhaust the administrative process as to his
education-related claims under the IDEA, § 1983, Section 504, and
the ADA.  Plaintiffs instead maintain that they are excused from
the IDEA's exhaustion requirement because the administrative
process cannot grant them relief and thus the administrative
process would be futile or inadequate.

        Although the policy of requiring exhaustion of
administrative remedies under the IDEA is a "strong one," certain
exceptions have been recognized.  <u>Komninos v. Upper Saddle River
Bd. of Educ.</u>, 13 F.3d 775, 778 (3d Cir. 1994).  Claimants may
bypass the administrative process where:  (1) "where exhaustion

---

16.  To the extent plaintiffs seek declaratory and injunctive
relief against Glen Mills, those claims have been dismissed for
lack of standing as discussed above.

would be futile or inadequate"; (2) "the issue presented is purely a legal question"; (3) "where the administrative agency cannot grant relief"; and (4) "when exhaustion would work severe or irreparable harm upon a litigant." Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 88-89 (3d Cir. 1996) (internal citations and quotations omitted); see also Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 271 (3d Cir. 2014). Absent one of these exceptions, a plaintiff's failure to exhaust IDEA administrative remedies deprives the court of subject matter jurisdiction. See Batchelor, 759 F.3d at 273.

Plaintiffs challenge the wholesale absence of any system of monitoring or oversight by the PA-DOE, Rivera, or CCIU of Glen Mills' educational system for minors with disabilities. They further assert that all minors with disabilities at Glen Mills were deprived of all aspects of the education to which they were entitled under the IDEA, including individualized programming, parent participation in the IEP process, an education provided by special education teachers, and availability of related services. Specifically, plaintiffs have alleged that all boys at Glen Mills, including disabled boys, were placed in one of two education tracks: an online learning course or a self-guided GED program using workbooks. No boys were provided any instruction by special education teachers. In addition, plaintiffs have alleged that no boys were provided appropriate, individualized IEPs and that Glen

-46-

Mills failed to follow the appropriate procedures for designing and implementing IEPs under the IDEA. The putative class involves potentially hundreds of minors who were placed at Glen Mills and who were allegedly denied any meaningful services under the IDEA.

This case is akin to Handberry v. Thompson, 446 F.3d 335 (2d Cir. 2006). There, inmates in New York City jails brought a putative class action challenging the defendants' asserted failure to provide them with educational services under state and federal law. 446 F.3d at 338. Among other things, plaintiffs alleged that the defendants did not provide any special education services to school-eligible inmates with disabilities. Id. The Court of Appeals for the Second Circuit concluded that plaintiffs were not required to exhaust administrative remedies before bringing suit in federal court "under the futility exception for challenges addressing systemic issues." Id. at 343. The Court of Appeals reasoned that the purposes of exhaustion were "unavailing" because the complaint did not raise challenges with respect to the content of a particular student's IEP, but instead alleged a complete "absence of any services whatsoever." Id. at 344.

Given the nature and volume of plaintiffs' claims, which allege a complete failure to provide special education services required under the IDEA to a putative class of potentially hundreds of minors placed at Glen Mills, administrative exhaustion would be futile. This court's decision in Blunt v. Lower Merion School

District, 559 F. Supp. 2d 548 (E.D. Pa. 2008), does not dictate a different result.  There, this court held that the plaintiffs were not excused on futility grounds from exhausting their administrative remedies under the IDEA as to their claims against a school district, its superintendent and director of pupil services, and the school board.  559 F. Supp. 2d at 558-59.  We determined that the "overwhelming focus" of plaintiffs' claims against those defendants was on the individualized circumstances of the named students and the defendants' failure to provide those students with appropriate or adequate services under the IDEA.  Id.  However, we concluded that the Blunt plaintiffs were excused from exhausting administrative remedies as to their claim under the IDEA against the PA-DOE alleging a failure by the PA-DOE to supervise the school district's identification of children with disabilities and provision of special education services on futility grounds.  Id. at 560.  We reasoned that "allegations of systemic failure could not be remedied through any administrative process."  Id.

        In sum, plaintiffs may proceed with their claims under § 1983, the IDEA, the ADA, and Section 504 of the Rehabilitation Act in this court.  The motions of defendants Glen Mills, the PA-DOE, Rivera, and CCIU to dismiss plaintiffs' claims under § 1983, the IDEA, the ADA, and Section 504 of the Rehabilitation

Act for failure to exhaust administrative remedies will be denied.[17]

X

In Counts Nine and Ten of the complaint, plaintiffs Derrick and Walter, individually and on behalf of all youths in the Disability Subclass, bring claims against Glen Mills, CCIU, and the PA-DOE for violation of their rights under Section 504 of the Rehabilitation Act and the ADA. As discussed above, defendants have moved to dismiss these claims for failure to exhaust administrative remedies. Defendant PA-DOE has also moved to dismiss these claims for failure to state a claim for relief under Rule 12(b)(6).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall,

---

17. To the extent that defendants move to dismiss Counts Three, Four, and Five of the complaint, which allege violation of plaintiffs' procedural due process and equal protection rights under the Fourteenth Amendment and the right to a public education under Pennsylvania law, we also conclude that administrative exhaustion under the IDEA is not required to the extent those claims are asserted on behalf of non-disabled children. Only a "child with a disability" may seek relief under the IDEA. See Durrell ex rel. S.H. v. Lower Merion Sch. Dist., No. 10-6070, 2011 WL 2582147, at *2 (E.D. Pa. June 30, 2011) (citing D.S. v. Neptune Twp. Bd. of Educ., 264 F. App'x 186, 188-89 (3d Cir. 2008)). Thus, these claims are not subject to IDEA's administrative exhaustion requirement to the extent they implicate the educational rights of non-disabled students. See id. at *3.

-49-

solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program" receiving federal funding.  29 U.S.C. § 794(a).  Similar to Section 504 of the Rehabilitation Act, Section 202 of the ADA states:

> [N]o qualified individual with a disability
> shall, by reason of such disability, be
> excluded from participation in or be denied
> the benefits of the services, programs, or
> activities of a public entity, or be subjected
> to discrimination by any such entity.

42 U.S.C. § 12132.  The standards that govern ADA claims also apply to Section 504 clams.  <u>See</u> <u>Ridley Sch. Dist. v. M.R.</u>, 680 F.3d 260, 282-83 (3d Cir. 2012).  Under either statute, a plaintiff must allege that he or she "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his or] her disability."  <u>Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, 587 F.3d 176, 189 (3d Cir. 2009) (citation omitted).

Plaintiffs allege that the PA-DOE knew that plaintiffs Derrick, Walter, and other students with disabilities at Glen Mills required reasonable accommodations to access its educational and rehabilitative programs but that the PA-DOE intentionally and with deliberate indifference discriminated against them based on their disabilities.  Specifically, plaintiffs have averred that

defendants failed to adjust policies, practices, and procedures to account for their disabilities and instead subjected them to discrimination in the form of physical force, restraint, isolation, and disciplinary sanctions. These allegations are sufficient to state a claim under the ADA and the Rehabilitation Act.[18]

Accordingly, the motions of defendants to dismiss plaintiffs' claims under Section 504 and the ADA in Counts Nine and Ten of the complaint will be denied.

XI

Finally, we turn to the motions of defendants Taylor and Walker, two former employees of Glen Mills, as well as Rivera, the Secretary of the PA-DOE, and the PA-DOE to sever the claims against them. Under Rule 21 of the Federal Rules of Civil Procedure, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." In addition, Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

---

18. The PA-DOE also asserts that plaintiffs' ADA claim should be dismissed because injunctive relief is not available now that Glen Mills has ceased operation and PA-DOE is immune from damages. Congress abrogated sovereign immunity for claims under Title II of the ADA. 42 U.S.C. § 12202; see also Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 556 (3d Cir. 2007); Grieco v. N.J. Dep't of Educ., No. 06-4077, 2007 WL 1876498, at *5 n.2 (D.N.J. June 27, 2007). Accordingly, we decline to dismiss plaintiffs' ADA claim against the PA-DOE on this ground.

crossclaims, counterclaims, or third-party claims." Whether severance is warranted involves consideration of several factors, including: "(1) whether the issues sought to be tried separately are significantly different from one another"; (2) "whether the separable issues require the testimony of different witnesses and different documentary proof"; (3) "whether the party opposing the severance will be prejudiced if it is granted"; and (4) "whether the party requesting the severance will be prejudiced if it is not granted." Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000). District courts are given broad discretion when deciding whether to sever a case pursuant to Rule 21 or Rule 42(b). Kimmel v. Cavalry Portfolio Servs., 747 F. Supp. 2d 427, 434 (E.D. Pa. 2010).

We decline to sever the claims against Taylor and Walker. As stated above, plaintiffs have alleged claims against them for assault and battery as well as § 1983 claims for violation of their rights to be free from excessive and unreasonable force under the Eighth Amendment. Rather than being separate and isolated, these acts are specific examples of the "culture of violence" that is alleged to have existed at Glen Mills. Similar witnesses and documentary evidence may be utilized for the claims against Walker and Taylor as to the abuse claims against Glen Mills and Ireson and other claims at issue in this action. Duplication of trials thus would be inefficient and could unnecessarily expose

the plaintiffs, who are minors, to additional trauma.  Any

potential prejudice to Walker and Taylor that would result from a

joint trial with other defendants can be minimized through

instructions requiring the jury to consider evidence separately as

to each defendant and each claim.

In addition, we will not sever the claims against Rivera

and the PA-DOE.  Rivera and the PA-DOE have taken the position that

plaintiffs' claims against them implicate only "education" issues

and thus should be separated from plaintiffs' "abuse claims" to

avoid inefficiency, delay, and prejudice.  However, plaintiffs'

claims of insufficient education at Glen Mills are intertwined with

plaintiffs' claims regarding physical abuse.  The alleged abuse may

constitute improper restraint, punishment, and discrimination under

the IDEA, ADA, and Section 504.  Plaintiffs have asserted that

complaints about inferior education programming led to abuse and

that they were forced to remain in the allegedly abusive

environment at Glen Mills longer that otherwise required when they

failed to make educational progress.  As with the claims against

Taylor and Walker, any potential prejudice can be minimized through

instructions to the jury to consider each defendant and each claim

separately.

Accordingly, the motions of defendants Walker, Taylor,

Rivera, and the PA-DOE to sever under Rules 21 and 42 will be

denied.