# EXHIBIT A

# SETTLEMENT AGREEMENT BETWEEN DERRICK, et al.,
## and
## CHESTER COUNTY INTERMEDIATE UNIT

## DEFINITIONS

**Action** means *Derrick, et al. v. Glen Mills Schools, et al.*, 19-cv-01541-HB, filed on April 11, 2019.

**Approved Claim** means a claim approved by the Fund Administrator for disbursement to an Eligible Claimant from the GMS Education Fund.

**Claim Determination** means an award amount as determined by the Fund Administrator(s) due to an Eligible Claimant from the *Compensatory Education Program Fund* and/or *Education Damages Fund.*

**Claims Period** means the period one (1) year from the Effective Date of the Settlement Agreement when a Former Student can submit a claim for the GMS Education Fund.

**Compensatory Education Program Fund** means a fund with the GMS Education Fund created for the benefit of GMS Former Students to be used to pay for or reimburse legitimate educational expenses.

**Complaint** means the legal document filed by Named Plaintiffs on behalf of themselves and others similarly situated to initiate this Action.

**Defendant or CCIU** means the Chester County Intermediate Unit ("CCIU").

**Disbursement Date** means the date Eligible Claimants are notified by the Fund Administrator of their eligibility for either the *Compensatory Education Program Fund* or *Education Damages Fund* in accordance with the amounts specified in the Claims Determination process set forth in this Agreement.

**Education Damages Fund** means a fund with the *GMS Education Fund* created for the benefit of GMS Former Students who experienced or observed physical abuse or restraint during school hours while at the Glen Mills Schools.

**Effective Date** means the date the Parties sign and enter the Settlement Agreement.

2

**Eligible Claimants** means Former Students identified as eligible for a payment award(s) from the GMS Education Fund.

**English Learner** or **EL** means any Former Student who does not speak English as their native or primary language and has a limited ability to read, speak, write, or understand English.

**Facility** means The Glen Mills Schools.

**Former Student** means any school-age student whom a court placed at the Glen Mills Schools for any period during the two years commencing on April 11, 2017 or for any period prior to April 11, 2017 who had not reached 20 years of age on or before April 11, 2019.

**Fund Administrator(s)** means a mutually agreed upon person or persons identified by Plaintiffs and approved by CCIU, who shall have a fiduciary duty to the parties to administer the GMS Education Fund at no cost to CCIU and allocate funding to pay Approved Claims.

**GMS Education Fund** means a fund created by CCIU for the benefit of former students at Glen Mills Schools. The Fund includes both a *Compensatory Education Program Fund* and *Education Damages Fund.*

**Individual with a disability** means any Former Student identified as a "child with a disability" under the Individuals with Disabilities Education Act. 20 U.S.C. § 1401, *et seq.* ("IDEA"), a "protected handicapped student" under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), or "individual with a disability" as defined under 28 C.F.R. § 35.104.

**Named Plaintiffs** means Derrick[1] through and with his next friend and mother Tina, Walter through and with his next friend and mother Janeva, and Thomas through his next friend and mother Michelle who initiated this Action.

---

[1] This Settlement Agreement uses pseudonyms to protect the privacy and safety of Named Plaintiffs, who were all minor children, and their parents or guardians, when this Action was filed.

**Parent** means a biological or adoptive parent, foster parent, or a legal guardian of a student aged 17 to 21 or legal guardian of an adult deemed incapacitated by a court.

**Parties** mean the Plaintiffs and Defendant Chester County Intermediate Unit ("CCIU") named in the Action.

**Pending Claims** means claims for payment that have been submitted to the Fund Administrator by Former Students but have not been processed and approved for disbursement.

**School age** means the period of an individual's life from the earliest admission age to a school district until the end of the school term in which a student reaches the age of 21 years or receives a regular education diploma. *See* 22 Pa. Code § 11.12.

**School Day** means instructional days during the School Year where Former Students participated in instruction, instructional programs, or educational services as an integral part of a school program.

**School Year** means "school year" as defined by 24 P.S. § 1-102 of the Public School Code of 1949, "the first day of July of one year and the 30th day of June of the following year."

**Settlement Agreement** means the agreement between the Named Plaintiffs and Defendant CCIU in the Action.

## INTRODUCTION

The Parties to this Settlement Agreement, by their attorneys, hereby stipulate and agree as follows:

WHEREAS, the Named Plaintiffs Derrick through and with his next friend and mother Tina, Walter through and with his next friend and mother Janeva, and Thomas through his next friend and mother Michelle, filed, on behalf of themselves and others similarly situated claims the Class Action Complaint commencing the Action in the U.S. District Court for the Eastern District of Pennsylvania ("District Court");

WHEREAS through this Action Named Plaintiffs sought injunctive relief and compensatory

4

damages from Defendant CCIU for the deprivation of educational services to hundreds of youth placed at the Glen Mills Schools following an adjudication of delinquency, including denial of a free appropriate public education to students with disabilities as well as damages for disability discrimination and infliction of physical and other harm to these youth;

WHEREAS Defendant CCIU denies these allegations and following the denial of multiple motions to dismiss and several years of discovery, the Parties now seek a full resolution of the claims against Defendant CCIU only;

WHEREAS the Parties have voluntarily agreed to resolve all claims asserted in the Action against Defendant CCIU according to the terms set forth herein;

NOW, THEREFORE, the Parties do hereby stipulate and agree, as follows:

## I.      CREATION OF GMS EDUCATION FUND

A.      CCIU will initiate and seed a fund entitled *Education Fund for the Benefit of Former Glen Mills Students*" ("GMS Education Fund") which shall be funded in the following manner, with the understanding that the allocation of responsibility between and among the funding parties (CCIU and its insurers) is entirely a matter of CCIU's discretion, provided, however, that under no circumstances shall the last payment below occur prior to the commencement of year two of this agreement:

1.      One million dollars funded within six months of execution of the Agreement, with a portion of that fund allocated to payment of "prevailing party" attorneys' fees as delineated in paragraph XI(A);

2.      Up to one million dollars in year two or sooner, as needed to pay any Approved Claims;

3.      Up to one million dollars in year three or sooner, as needed to pay any

Approved Claims.

      B.     From the amount paid in each year, one half of the funds not apportioned for attorneys' fees shall be made available immediately as "cash payments" for money damages to remedy documented claims of injury related to participation in educational programming at Glen Mills and one half shall be available for the payment or reimbursement of legitimate educational expenses as defined herein, including academic and vocational programs, post-secondary tuition, and education-related supplies and equipment.

      C.     At all times, the GMS Education Fund shall maintain sufficient funds to pay all Pending and Approved Claims for cash payments as damages or payment of expenses for compensatory education. If, in the judgment of the Fund Administrator(s), at the conclusion of any year existing funds are sufficient to pay all Approved and Pending Claims for either cash payments or payments for compensatory education, additional payments to the GMS Education Fund may be deferred until the Fund Administrator determines that such additional funds are needed.

      D.     Each claimant shall have access to and may use their share of compensatory education funds for a period of six years from the time of the Former Student's claim is approved.

## II.     COMPENSATORY EDUCATION FUND

      A.     The GMS Education Fund created pursuant to Paragraph I(A) of this Agreement, shall allocate the amount of $1,350,000 as a "Compensatory Education Program Fund" which shall be administered on an ongoing basis by Fund Administrator(s) who are mutually agreed upon person or persons identified by Plaintiffs and approved by CCIU. The Compensatory Education Program Fund shall be administered at no cost to CCIU.

      B.     Former Students must give notice to the Fund Administrator(s) of their intent to use these allocated funds for educational purposes by submitting the *Intent to Use Compensatory*

*Education Program Funds* form (attached to Settlement Agreement as "**Exhibit A**") to the Fund Administrator(s) within one (1) year of the Effective Date of the Settlement Agreement.

      C.      **<u>Eligibility for Payments from the Compensatory Education Program Funds</u>**

      1.      To be eligible to receive a settlement share of the Compensatory Education Program Funds, a Former Student must satisfy each of the following criteria:

      a.      Return a completed *Intent to Use Compensatory Education Program Funds* (hereinafter *"Intent Form")* that is postmarked, if submitted by U.S. Mail, or received, if submitted electronically, by no later than one (1) year from the Effective Date. Each *Intent Form* must be physically or electronically signed by the claimant under penalty of perjury. Each claimant must submit their own *Intent Form* or a parent, legal guardian, or next of kin may complete and sign an Intent Form on behalf of a Former Student if a student is unavailable due to hospitalization, a medical condition, incarceration, or other good cause during the Claims Period. A Former Student will not be eligible for funding until an *Intent Form* is submitted and approved by the Fund Administrator;

      b.      State under oath that they have not previously released their claim(s) against CCIU;

      c.      State that they release their claim(s) against CCIU pursuant to the terms of this Agreement;

      d.      Be determined by the Fund Administrator(s) to be eligible for Compensatory Education Program Funds based on the number of school days a Former Student resided at Glen Mills, as verified by documentation obtained from Glen Mills reflecting "discharge date" and "date of admission".

      2.      The Named Plaintiffs shall be eligible to receive their settlement share of the

Compensatory Education Program Funds automatically and their claims are deemed approved, provided, however, that such eligibility shall not be construed to excuse the obligation to submit documentation of legitimate educational expenses as required under subparagraph II(K)(3) of this agreement.

      D.     **Duties to Notify Potential Recipients of Compensatory Education Funds**

            1.     Plaintiffs' Counsel or its designee shall send each Former Student an *Intent to Use Compensatory Education Program Funds Form* ("Intent Form") along with a Settlement Notice to the last known address of each Former Student based on documents produced by Glen Mills Schools. In addition, Plaintiffs shall create an internet website entitled *Glen Mills Education Claims Website* ("Claims Website") which shall allow Former Students to submit Intent Forms electronically through the final claim filing deadline or no later than one (1) year from the Effective Date.

            2.     Plaintiffs' Counsel may also undertake other activities at its discretion to notify Former Students of their potential eligibility for Compensatory Education Program Funds.

            3.     CCIU agrees to host a link to the Claims Website on its CCIU website.

      E.     **Disputed Claims**

If upon initial review of the *Intent Form,* the Fund Administrator is unable to determine the validity of the claim, the Fund Administrator shall notify the claimant in writing and state the reasons why the information contained on the *Intent Form* is insufficient to determine the validity of the claim. The claimant shall be given thirty (30) days from the date of mailing or email transmission in which to supplement or amend their *Intent Form* or provide such other information supporting the validity of his/her claim. Plaintiffs' Counsel may also submit information to the Fund Administrator(s) in support of any disputed *Intent Form*. Upon further review of the disputed *Intent Forms*, including such additional information as may be submitted by the claimant, the Fund

8

Administrator(s) shall either approve or reject the claim. However, submission of the *Intent Form* alone by the deadline shall be sufficient to establish potential eligibility as a Pending Claim and no individual shall be penalized for the time taken to resolve a dispute.

    F.    **Rejected Claims**

If, after providing an individual with an opportunity to cure any defect through the dispute process described herein, the Fund Administrator(s) subsequently rejects a claim as not meeting the terms and criterion set forth in this Agreement, the Fund Administrator(s) shall so notify the potential claimant in writing.

    G.    **Deadline for Fund Administrator Review of All Claims**

The Fund Administrator shall complete its review and issue a determination as to the validity of all *Intent Forms* and a Former Student's eligibility for a settlement share of the Compensatory Education Program Funds within sixty (60) days after the one-year deadline for submitting *Intent Forms.*

    H.    **Process for Allocating Compensatory Education Program Funds**

    1.    Each Claimant with a validated *Intent Form* shall be entitled to receive a portion of the Compensatory Education Program Funds in accordance with the Parties' agreed-upon distribution formula, as follows:

    a.    Any Former Student shall receive 5.5 compensatory education hours (monetized up to $50 per hour) for every school day at the facility.

    b.    Any Individual with a Disability or English Learner shall be entitled to 1.5 times the total hours of compensatory education determined under this Paragraph to address the deprivation of a FAPE or deprivation of language instruction.

    2.    In the event that the claims submitted and found to be eligible under this sub-

section exceed the amount in the Compensatory Education Program Funds, the Fund Administrator shall make *pro rata* reductions in the size of the claimants' awards.

        3.      The Fund Administrator's allocations and award amounts (hereinafter Claims Determinations) shall be final and binding on all Former Students and not subject to appeal.

I.      **Determination – Final and Binding**

All final determinations by the Fund Administrator(s) regarding the award amount due to an Eligible Claimant ("Claim Determination") shall be final, binding, and non-appealable.

J.      **Compensatory Education Disbursement**

        1.      No later than thirty (30) days after the completion of the allocation process set forth in paragraphs above, the Fund Administrator shall cause the distribution of *Notice of Compensatory Education Program Fund* awards in the amounts specified in the Claims Determination process to all Eligible Claimants. This date will constitute the Disbursement Date.

        2.      The Fund Administrator will provide CCIU and Plaintiffs' Counsel with a complete list of all award recipients, including their names, addresses, email addresses and the amount of their awards. CCIU or Plaintiffs' Counsel may request and shall receive access to any supporting documentation upon which the Fund Administrator relied in making any award.

        3.      To the extent any portion of the Compensatory Education Program Fund has not been utilized within six (6) years of the Disbursement Date, or to the extent that any portion of such funds remains unencumbered by a Claim Determination against it submitted during the Claims Period in accordance herewith, said portion shall be returned to the paying parties according to an apportionment acceptable to those parties.

K.      **Use of Compensatory Education Program Funds**

        1.      The Compensatory Education Program Fund described herein shall be used

wholly and exclusively for "legitimate educational expenses," which will be limited to documented costs, including co-payments, incurred for the following educational programs, services, materials, or equipment for which the claimant or his parent or guardian has not received reimbursement though insurance or other third party sources: (a) secondary or special education instruction or tutoring, including behavior and social skills training, provided by licensed instructors or certified teachers, or both, or in licensed facilities or programs or in private licensed or nonpublic schools, including tuition and costs for such schools; (b) "related services," as defined in the regulations implementing the Individuals with Disabilities Education Act, provided by appropriately certified or licensed professionals or in licensed facilities or programs, including but not limited to occupational, physical, and speech and language therapies and counseling; (c) behavioral therapy, training, or education provided by qualified behavioral specialists, therapeutic support staff, personal care assistants, social workers, mental health providers, therapists, nurses, and healthcare providers or licensed or appropriately accredited providers, schools or programs; (d) planned courses of instruction offered though internet providers with secondary, post-secondary or special education accreditation or licensing in the state or country in which they are physically located; (e) educational evaluations and consultative services provided by individuals, facilities, programs, or related services providers; (f) reasonable transportation expenses to access compensatory education services, at the then-applicable reimbursement rate approved by the Internal Revenue Service, when such transportation is provided by the claimant or designees in private vehicles, or the actual fee charged for such transportation when provided by licensed private carriers; (g) planned post-secondary vocational training or education, including tuition for credit-bearing and non-credit-bearing coursework provided by a college, university, technical school, or an accredited and licensed institution and associated costs for applying to and participating in post-secondary and vocational education including supplies to

support vocational programs, apprenticeships or current or future employment; (h) music and art programs and materials, memberships, equipment, costs, materials, peripherals, and supplies; (i) educational software, hardware, computers, printers, books, texts, materials, equipment, and school supplies, to the extent required to access or participate in legitimate educational programs or services as defined hereunder, including assistive technology equipment and devices; and (j) job, career, or life coaching, employment assistance, including employment specialists, assessment of job skills, interest inventories, and other transition services.

2.      Expenses for which payment or reimbursement will not be available include those solely used for recreational activities or entertainment; motor vehicles; computer equipment or electronic devices unless directly tied to and necessary for the delivery of instruction or related services for which payments or reimbursements are made; housing or other real property; real estate improvements such as pools, spas, and fencing; and clothing, jewelry, and other items not directly related to and necessary for education or education-related treatment.

3.      An Eligible Claimant or Parent may obtain payments or reimbursement from the Compensatory Education Program Fund for educational expenses as described herein by providing the Fund Administrator(s) with appropriate documentation of a payment made, an obligation to make payment, or request for future payment for educational expenses, services, or costs as described in subparagraph II(K)(1) of this agreement. Such appropriate documentation shall include but not be limited to invoices, billing statements, canceled checks, credit card statements, receipts, screen shots of payments from valid digital payment services such as Venmo or PayPal, or other similar evidence of payments or expenses. The Fund Administrator(s) shall make payment or reimbursement within thirty (30) days of receipt of appropriate documentation or as otherwise set forth in the Settlement Agreement or agreed to by the Fund Administrator(s) or Eligible Claimant.

4.      The Fund Administrator(s) shall at its discretion make payments directly to vendors and/or service providers whenever feasible and in accordance with the terms as provided in the Settlement Agreement. The obligation of the Fund Administrator(s) to make direct payments to service providers and/or vendors and/or reimbursements or payments to the Eligible Claimant in accordance with this Agreement shall be contingent upon the provision of appropriate documentation to the Fund Administrator(s) sufficient to demonstrate to the satisfaction of the Fund Administrator(s) that the service, product, or cost qualifies as an educational expense.

5.      Notwithstanding any obligations imposed upon the Fund Administrator(s) by the terms of this Agreement, the Fund Administrator(s) shall have the discretion and ability to make disbursements which are not otherwise described in this Agreement so long as the disbursements are, in the opinion of the Fund Administrator, consistent with both the prescriptive and proscriptive provisions of the Settlement Agreement, provided, however, that the Administrator(s) shall not make such disbursement relating to legitimate educational expenses outside those described in this Agreement without the written consent of the representative of each party, which consent shall be deemed given by any party that fails to respond within ten days of receipt of a written request for consent from the Administrator(s).   Neither party shall unreasonably withhold consent and shall explain its reasons for doing so in writing delivered to the Administrator(s) and the other party.

6.      The Fund Administrator(s) shall, on an annual basis, provide CCIU and Plaintiffs' counsel data substantiating the use of compensatory education funds to date.

### III.   EDUCATION DAMAGES FUND

A.      The GMS Education Fund created pursuant to this Agreement, shall allocate the amount of $1,350,000 as an Education Damages Fund to be administered (at no cost to CCIU) by a mutually-agreed upon fiduciary identified by Plaintiffs and approved by CCIU ("Fund

13

Administrator(s)").

B.   **Eligibility for Payments from the Education Damages Fund**

    1.   To be eligible to receive a settlement share of the Educational Damages Fund, a Former Student must satisfy each of the following criteria:

    a.   Return a completed *Education Damages Claims Form* (attached to Settlement Agreement as **Exhibit B**) that is postmarked, if submitted by U.S. Mail, or received, if submitted electronically, by no later than one (1) year from the Effective Date;

    b.   State under oath that they are a Former Student who experienced or observed physical abuse or restraint during school hours while at the Glen Mills Schools, or that such experience or observation outside school hours materially affected his school performance;

    c.   Identify the approximate date(s) of the injuries;

    d.   State under oath that they have not previously released their claim(s) against CCIU;

    e.   State that they will release their claim(s) against CCIU pursuant to this Agreement;

    f.   Be determined to be eligible for Education Damages Funds by the Fund Administrator.

    2.   Sworn statements alone will not be sufficient alone to establish dates of attendance or disability or English language learner status. However, education records produced or provided by the Parties in the Action or by Defendant Glen Mills Schools shall be acceptable to establish or confirm this information.

    3.   The Named Plaintiffs shall be eligible to receive a settlement share of the Educational Damages Fund automatically without submitting supporting documentation.

14

C.     **Notification of Potential Eligibility**

1.     Plaintiffs' Counsel or its designee shall send each identified Former Student an *Education Damages Claim Form* along with a Settlement Notice to the last known address, as documented by Glen Mills Schools records. In addition, the Internet Website created by the Plaintiffs shall allow Former Students to submit *Education Damages Claim Forms* electronically through the date of the claim filing deadline.

2.     Plaintiffs' Counsel may also undertake other activities at its discretion to notify Former Students of their potential eligibility.

D.     **Filing of Completed Claims Forms**

Former Students must submit notice of their potential claim by submitting the *Education Damages Claims Form* (attached to Settlement Agreement as **Exhibit B**) to the Fund Administrator within one (1) year of the Effective Date of the Settlement Agreement ("Claims Period"). Each Claims Form must be physically or electronically signed by the claimant under penalty of perjury. Each claimant must submit their own Claims Form. A parent, legal guardian or next of kin may complete and sign a Claims Form on behalf of a Former Student if unavailable due to hospitalization or incarceration during the Claims Period. A Former Student will not be eligible for funding until a Claims Form is submitted and approved by the Fund Administrator(s).

E.     **Disputed Claims**

If upon initial review of the Claims Form, the Fund Administrator is unable to determine the validity of the claim, the Fund Administrator shall notify the claimant in writing and state the reasons why the information contained on the Claims Form is insufficient to determine the validity of the claim. The claimant shall be given thirty (30) days from the date of mailing or email transmission in which to supplement or amend their Claims Form or provide such other information supporting the

validity of his/her claim. Plaintiffs' Counsel may also submit information to the Fund Administrator in support of any disputed Claims Form. Upon further review of the disputed Claims Forms, including such additional information as may be submitted by the claimant, the Fund Administrator shall either approve or reject the claim.

F.     **Rejected Claims**

If the Fund Administrator rejects a claim as to meeting the terms of provisions of this Agreement, the Fund Administrator shall so notify the claimant in writing, following an opportunity to resolve any dispute.

G.     **Deadline for Fund Administrator Review of Education Damages Claims**

The Fund Administrator shall complete its review and issue a determination as to the validity of all Claims Forms and eligibility for settlement share of the Educational Damages Fund within sixty (60) days of the deadline for submitting Claims Forms.

H.     **Claimant Determination – Final and Binding**

All determinations of the Fund Administrator shall be final, binding, and non-appealable.

I.     **Educational Damages Allocation Procedure**

1.     Each Claimant with a validated Claims Form shall be entitled to receive a portion of the Educational Damages Fund in accordance with an agreed-upon distribution formula developed by the Fund Administrator and Plaintiffs' Counsel ("Claim Determination"). All Eligible Claimants for damages payments will receive a fixed amount, not to exceed two hundred and fifty dollars ($250.00) for each documented school day of placement at Glen Mills.

2.     In the event that the claims submitted and found to be Eligible under this sub-section exceed the amount in the Educational Damages Fund, the Fund Administrator shall make *pro rata* reductions in the size of the claimants' awards.

3.      The Fund Administrator's final allocation determinations, and award amounts (Claim Determinations) shall be final and binding on all Former Students and not subject to appeal. CCIU or Plaintiffs' Counsel may request and shall receive access to any supporting documentation upon which the Fund Administrator relied in making any award.

J.      **Education Damages Disbursement**

1.      No later than thirty (30) days after the completion of the Claims Determination process set forth in paragraphs above, the Fund Administrator shall cause the distribution of education damages awards in the amounts specified in the Claims Determination to Eligible Claimants in the form of checks or electronic payments, per the Eligible Claimant's election of payment method, along with 1099-MISC forms to Eligible Claimants. All checks shall be negotiable for no more than six months from the date of mailing.

2.      The Fund Administrator(s) will provide CCIU and Plaintiffs' Counsel with a complete list of all award recipients, including their names, addresses, email addresses and the amount of their awards.

3.      To the extent that any portion of the Educational Damages Fund remains unencumbered by a Claim Determination against it submitted during the Claims Period in accordance herewith, said portion shall be returned to the paying parties according to an apportionment acceptable to those parties.

## IV.      FORMS

The Forms attached to this Settlement Agreement as **Exhibits A, B, and C** have been agreed upon by CCIU and Plaintiffs' counsel, and shall not be altered by either party without written agreement of the other.

## V.     DURATION OF THIS SETTLEMENT AGREEMENT

A.     This Settlement Agreement is effective immediately upon the signature of the Parties ("Effective Date").

B.     This Settlement Agreement shall expire ten (10) years from the Effective Date or upon disbursement of all funds by the Fund Administrator.

## VI.     ENFORCEMENT

A.     The Parties agree that this Settlement Agreement may be enforced in a court of competent jurisdiction.

B.     In the event of material non-compliance by CCIU, which is not remedied within fourteen days of CCIU's receipt of written notice specifying such non-compliance, Plaintiffs may seek legal redress including but not limited to an extension of the time period of this Settlement Agreement.

C.     In the event the court finds that a party has not complied with a material provision of this Settlement Agreement, which is not remedied within fourteen days of the non-compliant party's receipt of written notice of such non-compliance, the parties agree that the court shall have the power to order specific performance of the provision and/or any other relief the court deems necessary to ensure compliance.

## VII.     NOTICE TO COUNSEL

A.     Notices and other written communications pursuant to this Settlement Agreement shall be in writing.

B.     Notice to CCIU shall be addressed to the Executive Director of CCIU, with a copy to CCIU's Solicitor (Kenneth Roos, Esq., Wisler Pearlstine, 460 Norristown Road, Ste. 110, Blue Bell, Pennsylvania 19422-2323) and special counsel (Andrew Faust, Esq., Sweet, Stevens, Katz, Williams,

331 E. Butler Avenue, New Brittan, PA 18901). Notice to Plaintiffs shall be addressed to Maura McInerney, Esq. at the address specified in the signature page of this Settlement Agreement.

C.      CCIU's Solicitor shall notify Plaintiff's counsel in the event of a change in CCIU's Executive Director, Solicitor, or special counsel and Plaintiff's counsel shall notify CCIU's Solicitor in the event substitution is to be made in Plaintiff's counsel to receive communications under this Settlement Agreement, and in either event, the new names and contact information shall be provided.

## VIII.   MODIFICATION

This Settlement Agreement may not be modified without the written consent of the Parties.

## IX.   DISMISSAL OF CLAIMS AGAINST CCIU

Within five (5) business days of the Effective Date, the Parties shall execute, deliver, and file a stipulation of voluntary dismissal of the claims against CCIU with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and without costs to either party, substantially in the form attached hereto as **Exhibit C**.

## X.   CONSIDERATION AND WAIVER & RESERVATION OF RIGHTS

A.      In consideration of the rights and obligations set forth herein, Plaintiffs, their successors, assigns, heirs, executors, administrators, and legal representatives, with the intent to be legally bound hereby, fully and forever release, acquit, discharge and hold harmless Defendant CCIU and its board, officers, employees, insurers, and agents of the claims that were or could have been asserted in the Action captioned *Derrick, et al. v. Glen Mills Schools, et al.* filed in the United States District Court for the Eastern District of Pennsylvania and captioned at 2:19-cv-01541-HB, including claims against CCIU by and on behalf of any class that the Court may hereafter certify in this action to the extent allowed by law. Plaintiffs agree not to pursue class certification for any claims that were or could have been asserted against CCIU.

19

B.      Plaintiffs expressly reserve the right to make any and all claims against any and every other person, firm or entity, other than CCIU and its board, officers, employees, insurers, and agents, including, but not limited to, the remaining defendant(s) in the Action. Plaintiffs also expressly reserve the right to assert claims that such other persons, firms or entities, not CCIU, are liable for Plaintiffs' injuries, losses or damages.  In addition, Plaintiffs expressly reserve the right to make any and all claims against any and every other person, firm or entity, other than CCIU, including, but not limited to, the remaining defendant(s) in the Action and reserve the right to claim that such other persons, firms or entities, not CCIU, are liable for Plaintiffs' injuries, losses or damages.

C.      Plaintiffs and CCIU agree that there is no right of contribution or indemnification by any non-settling persons, firms or entities against CCIU under any conceivable theory. Plaintiffs and CCIU further agree that the total amount recoverable against CCIU shall never exceed $3,000,000, if any non-settling defendant somehow obtains a judgment in a court of law by way of cross-claim or third party action against CCIU. Accordingly, Plaintiffs agree that the amount of their judgment against said non-settling defendant shall be reduced to the extent necessary to extinguish such cross-claim judgment against CCIU.

D.      Plaintiffs and CCIU expressly acknowledge that this Agreement is made as a compromise between the Parties for the purpose of fully resolving all claims asserted against Defendant CCIU alone. The Parties further acknowledge and agree that the awards provided to individual students pursuant to this Agreement in the form of compensatory education services and education damages are wholly insufficient to compensate Former Students, including Named Plaintiffs, for the injuries and harm they sustained and the deprivation of education Former Students experienced while residing at Glen Mills Schools and accordingly additional relief, compensation and remediation is needed but shall be sought from parties other than CCIU.

## XI.   ATTORNEYS' FEES AND COSTS

A.    In full satisfaction of Plaintiffs' claims for payment or reimbursement of attorneys' fees and costs as against it, CCIU shall arrange for and make payment to Plaintiffs of documented attorneys' fees and costs in the amount of three hundred thousand dollars ($300,000.00) within forty-five days of the Effective Date and in a manner to be determined by Plaintiffs and such payments.

B.    In the event of material non-compliance with this Agreement by either party, which is not remedied within fourteen days of receipt of written notice by the other specifying such non-compliance, the other may recover reasonable attorneys' fees and costs incurred thereafter to enforce implementation of the terms hereof, any waiver herein to the contrary notwithstanding.

## XII.   STATEMENTS REGARDING RESOLUTION

The Parties agree that CCIU will issue a formal statement regarding this Settlement which shall be subject to approval by Plaintiffs.

## XIII.   SEVERABILITY PROVISION

A.    In the event that any provision of this Agreement, or the application thereof, other than any waivers provided herein by Plaintiffs or and payments in consideration thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect. The provisions of this Agreement, other than any waivers provided herein by Plaintiffs or and payments in consideration thereof, shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.

B.    This Settlement Agreement does not limit or affect the rights and remedies of any persons who are not a party to this Settlement Agreement or who have not received relief hereunder.

C.    The failure by any party to enforce any provision of the Settlement Agreement with

respect to any deadline or other provision herein shall not be construed as a waiver of their right to enforce deadlines or provisions of this Settlement Agreement.

## XIV.   ENTIRE AGREEMENT

This Settlement Agreement, along with its Exhibits, constitutes the full and complete agreement between the parties and supersedes all prior agreements between the Parties or their representatives, oral or written. The Agreement is the entire agreement between the Parties and is the result of extensive negotiations in which both parties had the right and the opportunity to submit proposals and to negotiate their proposals with the other party. No prior or contemporaneous agreements, oral or written, entered into prior to the execution of this Settlement Agreement regarding the subject matter of this Action shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein. Captions are included herein solely for convenience of reference, and shall not be used to limit the terms of the Settlement Agreement.

## XV.   CONFIDENTIALITY

The Parties acknowledge that the terms of this Agreement and any oral or written information exchanged between the Parties in connection with the preparation and performance of this Agreement shall be regarded as confidential information. Each Party shall maintain the confidentiality of all such confidential information, and without obtaining the written consent of the other Party, it shall not disclose any relevant confidential information to any third parties, except the information that: (a) is or will be in the public domain (other than through the receiving Party's unauthorized disclosure), including communications to potential beneficiaries of the settlement and publicity relating to the existence of the settlement and its essential terms; (b) is under the obligation to be disclosed pursuant to the applicable laws or regulations; or (c) is required to be disclosed by any Party to its Board of Directors, investors, insurers, legal counsel or financial advisors provided that such Directors,

22

investors, legal counsel or financial advisors shall be bound by the confidentiality obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement. This Section shall survive the termination of this Agreement for any reason.

## XV.   **EXECUTION**

This Settlement Agreement may be executed in multiple counterparts, and faxed and/or emailed signatures will be valid and enforceable, each of which shall be deemed an original, and all of which shall constitute the same document. Named Plaintiffs understand that the use of pseudonyms in their execution of this Agreement shall have the same effect as execution using their legal names.

**ATTEST:**                                   **CHESTER COUNTY INTERMEDIATE UNIT**

_Janice L. Heagy_  1/18/2023  By: _Bonnie J. Wolff_        1/18/23
Secretary            Date          Board President            Date

                                              **NAMED PLAINTIFF**

_____  By: _____
Witness            Date          Derrick                     Date

                                              **NAMED PLAINTIFF**

_____  By: _____
Witness            Date          Tina                        Date

                                              **NAMED PLAINTIFF**

_____  By: _____
Witness            Date          Walter                      Date

23

investors, legal counsel or financial advisors shall be bound by the confidentiality obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement. This Section shall survive the termination of this Agreement for any reason.

## XV.   EXECUTION

This Settlement Agreement may be executed in multiple counterparts, and faxed and/or emailed signatures will be valid and enforceable, each of which shall be deemed an original, and all of which shall constitute the same document. Named Plaintiffs understand that the use of pseudonyms in their execution of this Agreement shall have the same effect as execution using their legal names.

ATTEST:                                             **CHESTER COUNTY INTERMEDIATE UNIT**

By: _____
Secretary                     Date              Executive Director                        Date

**NAMED PLAINTIFF**

_____ 1/17/23 By: _____               1/17/23
Witness            Date              Derrick                                    Date

**NAMED PLAINTIFF**

_____ 1/17/23 By: _____               1/17/23
Witness            Date              Tina                                      Date

**NAMED PLAINTIFF**

By: _____
Witness                       Date              Walter                                    Date

23

investors, legal counsel or financial advisors shall be bound by the confidentiality obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement. This Section shall survive the termination of this Agreement for any reason.

## XV.   EXECUTION

This Settlement Agreement may be executed in multiple counterparts, and faxed and/or emailed signatures will be valid and enforceable, each of which shall be deemed an original, and all of which shall constitute the same document. Named Plaintiffs understand that the use of pseudonyms in their execution of this Agreement shall have the same effect as execution using their legal names.

**ATTEST:**                                    **CHESTER COUNTY INTERMEDIATE UNIT**

By: _____

_____
Secretary                          Date          Executive Director                    Date

**NAMED PLAINTIFF**

By: _____

_____
Witness                            Date          Derrick                               Date

**NAMED PLAINTIFF**

By: _____

_____
Witness                            Date          Tina                                  Date

**NAMED PLAINTIFF**

By: Walter                                    1·18·23

_____
Witness                            Date          Walter                                Date

23

_____  _____     **NAMED PLAINTIFF**
Witness            Date       By: _____  _____
                               Janeva                   Date

                               **NAMED PLAINTIFF**

_____  _____     By: _____  _____
Witness            Date          Thomas                 Date

24

**NAMED PLAINTIFF**

By: _____

_____     _____          _____     _____
Witness                                   Date                          Janeva                                                                      Date

**NAMED PLAINTIFF**

By: _Thomas_____

_____     1/18/23          By: _Thomas_____     1/18/23
Witness                                   Date                          Thomas                                                           Date

# XVI.   EXHIBIT A

## INTENT TO USE COMPENSATORY EDUCATION FUNDS

**[THIS FORM SHALL BE SENT TO ALL FORMER STUDENTS OF THE GLEN MILLS SCHOOLS IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT.]**

Dear_____,

As a result of a settlement of claims against the Chester County Intermediate Unit ("CCIU") only in *Derrick, et al. v. Glen Mills Schools, et al.*, Civil Action 19-cv-01541-HB, a federal case filed in the United States District Court for the Eastern District of Pennsylvania, you may be eligible to receive "compensatory education funds" this is money that may be used solely for educational purposes as described in this notice. **In order to access these education funds, you must complete this form by _____.**

**You will have up to six years to use your compensatory education funds, but you must complete the form below by the deadline to be eligible to access these funds at all.**

If you are a Former Student of the Glen Mills Schools who resided at Glen Mills from 2013-2019, you may be eligible to receive these compensatory education funds that will be allocated to Former Students based on the number of school days they attended the school. Additional funds are available for students with IEPs and those who were English Learners. Funds may be used for a wide range of educational purposes including all of the expenses outlined below. Funds may be provided to a Former Student to reimburse expenses and costs or may be paid directly to a college, vocational program, service provider, etc. on the student's behalf. Funds may also be used for counseling, job training, and educational materials such as a computer and educational software that may be reimbursed or purchased directly by the Fund Administrator on the student's behalf. To be eligible for reimbursement or direct payments, the student must provide documentation of a payment made or an obligation to make payment for educational services or materials.

Money from the compensatory education fund may be used for educational purposes, which include: (a) tuition for vocational training or education, including credit-bearing and non-credit-bearing coursework, provided by an accredited and licensed institution, supplies to support vocational programs, apprenticeships or current or future employment; (b) secondary or special education instruction or tutoring, in licensed facilities or programs or in private licensed or nonpublic schools; (c) occupational, physical, and speech and language therapies and counseling; (d) therapy, training, or education provided by qualified behavioral specialists, therapeutic support staff, personal care assistants, social workers, mental health providers, therapists, nurses, and healthcare providers or licensed or appropriately accredited providers, schools or programs; (e) planned courses of instruction offered though internet providers; (f) educational evaluations; (g) reasonable transportation expenses to access compensatory education services; (h) music and art

programs and materials, memberships, equipment, costs, materials, peripherals, and supplies; (i) educational software, hardware, books, texts, materials, equipment, and school supplies, to the extent required to access or participate in programs or services, including assistive technology equipment and devices; and (j) job, career, or life coaching, employment assistance, including employment specialists, assessment of job skills, interest inventories, and other transition services.

**Please direct any questions that you may have about your eligibility for or use of the Compensatory Education Programs Funds to the Fund Administrator:**

XXXXXX

## REQUEST TO USE COMPENSATORY EDUCATION FUNDS

*Derrick, et al. v. Glen Mills Schools, et al.*, Civil Action 19-cv-01541-HB,

To be eligible to receive funds from the Compensatory Education Program Fund, you must complete and return this form **on or before**          **2024** to the Fund Administrator at the following physical address or by email at the address indicated below:

### [name, address and email address of Fund Administrator].

If you have any questions, you may direct them by email to the Fund Administrator. This money may be available to a Former Student of the Glen Mills Schools who resided at Glen Mills from 2013-2019. These funds can be used for a wide range of education purposes and will be allocated to each Former Student based on the number of days he attended Glen Mills Schools. If you are eligible, funds will be placed into a separate account and will be available to you for a six year period to be used by **xxxxxxx**.

Student's Full Name: _____ Date of Birth: _____

### Contact Information

Student Address:  _____

Student Email:  _____

Parent Address:  _____

Student Phone Number: _____ Second Phone Number: _____

### Eligibility Screening

1. Did you attend the Glen Mills Schools between April 11, 2017 and April 11, 2019?
**YES    NO**

2. Did you attend the Glen Mills Schools at any time and were under 20 years of age on April 11, 2019?
**YES    NO**

*If your answer is No to both Question 1 and 2, you are not eligible for a Compensatory Education Program Fund award. If your answer to either question is yes, please complete the next questions.*

### Student Experience

27

What are the approximate dates when you attended the Glen Mills Schools (this information will be verified by admission documentation)? _____

Are you now or were you when you attended the Glen Mills School a student with an IEP or a Section 504 plan (Accommodations Plan)?

**YES    NO**

Are you now or were you when you attended the Glen Mills Schools an English Learner?

**YES    NO**

### Release and Waiver of Claims

By signing below, the student or parent declares under penalty of perjury that all of the information on this form is true and correct, and further agrees that upon receipt of the requested funds, they agree to *waive and release any claims or actions against the Chester County Intermediate Unit for compensatory education and damages* relating to the claims raised against CCIU only in *Derrick, et al. v. Glen Mills Schools, et al.*, 19-cv-01541-HB, a case in the United States District Court for the Eastern District of Pennsylvania. In addition, the student or parent agrees to use the requested funds only for a legitimate educational expense stated above.

_____
Student Signature                          Printed Name                                    Date

*If eligible individual is otherwise unavailable at time of declaration of intent to use:

_____
Parent/Guardian Signature                  Printed Name                                    Date

**The Fund Administrator will review this form and issue a determination in writing to the above address about the amount of compensatory education program funds available by ————, 2024*

Date: _____

28

## EXHIBIT B

## EDUCATION DAMAGES FUND CLAIM FORM

## [THIS FORM SHALL BE SENT TO ALL FORMER STUDENTS OF THE GLEN MILLS SCHOOLS IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT.]

Dear_____,

As a result of settlement of litigation involving the Chester County Intermediate Unit ("CCIU") in *Derrick, et al. v. Glen Mills Schools, et al.*, Civil Action 19-cv-01541-HB, a case in the United States District Court for the Eastern District of Pennsylvania, CCIU has established an Education Damages Fund for the benefit of Former Students of the Glen Mills Schools who experienced or observed physical abuse or the use of restraints during school hours while placed at the facility. You are receiving this form because you may be eligible for these funds.

**To obtain money damages, you must complete and return this form by xxxxxxx 2024 to the Fund Administrator at the following address or by email at the address below:**

**[name, address and email address of Fund Administrator].**

If you have any questions regarding this Fund, you may direct them by email to the Fund Administrator.

Student's Full Name:_____Date of Birth: _____

## Contact Information

Student Address:  _____

Student Email:  _____

Parent Address:  _____

Student Phone Number:  _____Second Phone Number:  _____

## Eligibility Screening

3. Did you attend the Glen Mills Schools between April 11, 2017 and April 11, 2019?

   **YES     NO**

29

4. Did you attend the Glen Mills Schools at any time and were under 20 years of age on April 11, 2019?

   **YES     NO**

   *If your answer is No to both Question 1 and 2, you are not eligible for the Education Damages award. If your answer to either question is yes, please answer the questions in the next section.*
   <u>**Your Experience at the Glen Mills Schools**</u>

5. When you attended the Glen Mills School, did you experience or observe physical abuse or the use of restraints during school hours?

   **YES     NO**

   *(Examples of physical abuse or the use of restraints include: being hit, kicked, punched, pushed, grabbed, choked, taken down, PR'd or watching another student be assaulted or restrained by staff)*

6. When you attended the Glen Mills School, did you experience or observe physical abuse or the use of restraints outside of school hours that materially affected your school performance?

   **YES     NO**

   *If your answer is No to both Question 3 and 4, you are not eligible for an Education Damages award. If your answer to either question is Yes, please answer the next question.*

7. For **EACH** instance of physical abuse or restraint that you experienced or observed, please describe the incident, provide the location, and the approximate date. Use a separate page if necessary.

| <u>**Description of Incident**</u> | <u>**Location**</u> | <u>**Approximate Date**</u> |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

30

## Release and Waiver of Claims Against CCIU

By signing below, the student or parent declares under penalty of perjury that all of the information on this form is true and correct, and further agrees that upon receipt of the requested funds, they agree to **_waive and release any claims or actions against the Chester County Intermediate Unit for compensatory education and damages_** relating to the claims raised against CCIU only in *Derrick, et al. v. Glen Mills Schools, et al.*, 19-cv-01541-HB, a case in the United States District Court for the Eastern District of Pennsylvania.

_____

Student Signature                                Printed Name                                Date


*If Former Student is otherwise unavailable at time of declaration:


_____

Parent/Guardian Signature                      Printed Name                                Date

31

EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DERRICK, by and with his parent and next friend TINA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GLEN MILLS SCHOOLS, et al.,<br><br>Defendants. | Case No. 2:19-cv-01541-HB |

**STIPULATION FOR VOLUNTARY DISMISSAL OF CHESTER COUNTY
INTERMEDIATE UNIT**

**IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned on

behalf of their respective clients, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure,

that the foregoing action is dismissed as to the Defendant Chester County Intermediate Unit with

prejudice. The parties to this stipulation shall bear their own costs, expenses, and attorney fees

except as may be set forth in a Settlement Agreement related to this dismissal.

Dated:

| FOR NAMED PLAINTIFFS | FOR DEFENDANT CHESTER COUNTY INTERMEDIATE UNIT |
|---|---|
| | |
| */s/ Maura McInerney* | */s/ Andrew E. Faust* |
| Maura McInerney | Andrew E. Faust |
| Kristina Moon | Jason D. Fortenberry |
| Margie Wakelin | SWEET STEVENS KATZ & WILLIAMS LLP |
| EDUCATION LAW CENTER PA | Bucks County Office |
| 215-346-6907 | 331 East Butler Ave. |
| kmoon@elc-pa.org | PO Box 5069 |
| | New Britain, PA 18901 |

32

215-345-9111

*Attorneys for Defendant Chester County*
*Intermediate Unit*

*/s/ Marsha Levick*
Marsha Levick
Kate Burdick
Nadia Mozaffar
Malik Pickett
JUVENILE LAW CENTER
215-625-0551 x130
kburdick@j1c.org

*/s/ Fred T. Magaziner*
Fred T. Magaziner
Michael H. McGinley
Roger Dixon
DECHERT LLP
215-994-2031
roger.dixon@dechert.com

33